STATE STREET TRUST COMPANY, trustee, *vs.* MARY JANE CROCKER & others.

Norfolk.    February 9, 1940. — June 15, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Trust*, Construction, Amendment. *Power. Words*, "At any time."

Upon the construction of an entire indenture of trust likely to continue in effect a long time and evidencing a dominating purpose of the settlor to provide for himself, his widow and his issue, and providing that "any of the trusts hereinbefore contained may at any time be amended" by an instrument signed by all of those of the settlor, his wife, and his son and daughter "who may be living at the time of such amendment" but that if either child should be dead "at the time of such amendment" his or her issue, or their respective guardians if they should be minors, should sign the instrument of amendment, the amending power was not limited to a single amendment; and an amendment, executed after the death of the settlor and his wife by the son and daughter, adding the son's wife as a beneficiary upon his death, wa effectually revoked by a later amendment, executed after the death of the son, by his sister and his issue eliminating the son's wife as such a beneficiary.

If it be assumed that a provision in a deed of trust, that "at any time" the deed might be amended by those who should be the settlor's issue at that time, created a power of appointment, such power was separate in each possible group of issue as donees and might be exercised by the groups successively over the same property, so that one group could revoke an appointment earlier made by another group.

PETITION, filed in the Probate Court for the county of Norfolk on July 31, 1939, by the trustee under an indenture of trust, for instructions.

From a decree entered after a hearing by *McCoole*, J., Mary Jane Crocker, Prescott Bigelow, Frederick G. Crocker, Jr. and a guardian *ad litem* appealed.

*R. H. Wiswall*, stated the case.

*A. B. Carey*, (*C. W. Morrill* with him,) for the respondents Mary Jane Crocker and others.

*R. G. Dodge*, (*J. V. Spalding* with him,) for the respondent Nina H. Bigelow.

*C. W. Nash*, guardian *ad litem*, submitted a brief.

Qua, J.  This controversy arises out of two successive attempts to amend an indenture between Prescott Bigelow and the petitioner, dated June 20, 1917, whereby Bigelow assigned three thousand shares of the Andrews Real Estate Trust to the petitioner to hold in trust for the benefit of himself, his wife, and his issue.

The terms of the trust, in brief outline, are these: The trustee is to pay the net income to the settlor during his life and upon his death is to pay three fourths thereof to his widow, Bessie P. Bigelow, and the remaining fourth in equal shares to his son Prescott Bigelow, Jr. and his daughter Elizabeth Bigelow Martin.  At the death of the widow the whole income is to be divided between the son and daughter and their issue by right of representation, among whom also final distribution is to be made twenty-one years after the death of the survivor of the settlor, his widow, his two children, and certain named grandchildren.  There are cross remainders between the respective lines of descent of the two children.  Each child of the settlor, however, is given a power of appointment over his or her proportionate share of the principal, if he or she should die without issue.  The settlor reserves to himself, in case "at any time" during his life there should be a failure of issue of either of his children, the right to revoke or amend "the trusts hereinbefore contained" for such child or his issue.  Then follows this paragraph: "Any of the trusts hereinbefore contained may at any time be amended by a written instrument annexed to an original or copy of this indenture in the possession of the Trustee, signed by all of those of said Prescott Bigelow, his wife Bessie P. Bigelow, and his children Prescott Bigelow, Jr. and Elizabeth Bigelow Martin, who may be living at the time of such amendment, provided, however, that in case at the time of such amendment, said Prescott Bigelow, Jr. should be dead, such instrument of amendment shall also be signed by his issue living at such time of amendment, in case of the minority of any of such issue, their signatures to be made by duly appointed guardian or guardians, and provided that in case said Elizabeth Bigelow Martin should be dead, such instrument of amendment

shall also be signed by her issue living at such time of amendment, in case of the minority of any of such issue, their signatures to be made by duly appointed guardian or guardians." It is further provided that no income payable under the instrument shall be alienable or subject to the claims of creditors.

The settlor, his wife, and his son are all deceased. The daughter still survives. The son left issue. Before the death of the settlor's son, he and his sister, the settlor's daughter, under date of December 21, 1936, joined in an amendment to the trust indenture whereby it was provided in substance that upon the son's decease three fourths of his share of the income should be paid to his widow during her life instead of to his issue, the issue to receive only the remaining fourth. After the death of the son, his issue and the settlor's daughter, under date of June 28, 1939, joined in a second amendment to the trust indenture which, if valid, had the effect of revoking the first amendment and for the future restoring the income of the son's half of the estate to his issue as originally provided in the indenture. Both purported amendments were in due form and were executed by those who at the respective dates of each amendment were designated to amend under the terms of the indenture. The trustee asks whether the second amendment is valid and whether the trustee should now distribute the income according to the indenture "as amended by the instrument dated December 21, 1936 and also as amended by said instrument dated June 28, 1939."

The creator of a trust may reserve to himself or grant to others powers of revocation or of modification. *Stone* v. *Hackett*, 12 Gray, 227, 232. *Kelley* v. *Snow*, 185 Mass. 288. *Seaman* v. *Harmon*, 192 Mass. 5, 8. *Jones* v. *Old Colony Trust Co.* 251 Mass. 309. *Loring* v. *Blake*, 98 Mass. 253. Am. Law Inst. Restatement: Trusts, §§ 37, 331. But it is contended in behalf of the son's widow, who was deprived by the second amendment of the life interest which she acquired by the first amendment, that the testator did not intend a continuing power to amend, but that he intended that there should be only one amendment, whenever made,

as to the disposition of the same property, and that such amendment should be final. This question of intent is, of course, to be determined upon a survey of the whole instrument the general plan or scheme of which may in appropriate instances indicate that particular words or phrases are to be read in a sense somewhat different from that which might be attributed to them if they stood alone. *Manning* v. *Manning,* 229 Mass. 527, 530. *Eustace* v. *Dickey,* 240 Mass. 55, 72, 73. *Temple* v. *Russell,* 251 Mass. 231, 235, 236. *Crowell* v. *Chapman,* 257 Mass. 492, 495. *Radio Corp. of America* v. *Raytheon Manuf. Co.* 300 Mass. 113, 117.

It seems apparent that the settlor's dominating purpose was to provide for himself, his widow, and his issue. He provided for these objects for a period extending twenty-one years after the deaths of his widow, his children, and three named grandchildren and then provided for final distribution within the circle of these same objects. Nowhere in the dispositions made by himself did he go beyond these objects. He could have left these dispositions final and irrevocable, or he could have reserved to himself alone in his lifetime the power to amend them. But he bore in mind the probability that changed conditions might call for readjustments, and that conditions might change at any period during the long term of the trust. He therefore provided in the paragraph hereinbefore quoted that any of the trusts "hereinbefore contained" might be amended "at any time." He could have expressly placed the power of amendment within the control of those who might be beneficiaries at the time of any amendment, but instead of doing so he entrusted the amending power at all times to the living members of his own immediate family and to his issue, and he required that those to whom he entrusted the power should act unanimously. In this way needed change could be brought about, and at the same time those whom he desired to benefit would always retain the ability to protect themselves. It seems to us that the same considerations which would persuade him to create such powers as these to amend "at any time" would likewise require

that there be power to amend more than once as to the same property or income during the period of such a trust as this. If flexibility and security were the objects sought, as they must have been, the need for both would continue to the end. It is difficult to believe that the settlor would have taken the pains which he did take to provide this method of adapting the trust to changes of circumstance if he had supposed that immediately upon the deaths of himself and his wife his two children at a single stroke could overthrow his plan, exclude his issue, and permanently establish their new plan beyond recall or alteration. A construction limiting the amending power to a single amendment would thus seem to fall far short of accomplishing the settlor's purpose. The words "at any time" do not necessarily mean at any one time. They may be interpreted as equivalent to "from time to time." *Reed* v. *Jones*, 133 Mass. 116, 117, 119. *Smith* v. *Howell*, 31 Vroom, 384, 388. *Hintz* v. *Hintz*, 78 Fed. (2d) 432. We think that they should be so interpreted here. See *Bowditch* v. *Banuelos*, 1 Gray, 220, 231, 232.

We cannot agree with the contention of the respondent Nina H. Bigelow that as the power of amendment refers to "the trusts hereinbefore [i.e. in the trust indenture] contained" it does not apply to the "new trusts" in her favor added by the first amendment. The argument derived from the intent and purpose disclosed in the instrument as a whole is too strong to be overcome by a technical rendering of these four words, which may well be construed as intended merely as a general reference to the trust or "trusts" originating in the indenture whether amended or not. References to statutes have been held to refer to those statutes as amended. *Merrill* v. *Paige*, 229 Mass. 511, 513, 514. *Farrell* v. *State*, 25 Vroom, 421. Nor do we think that the use of the words "at any time" in the settlor's reservation to himself of the power to amend if "at any time" during his life there should be a failure of issue of either of his children, an event which of course could happen but once in the case of either child, indicates that the general power of amendment immediately following is to

be exercised but once. The matter of significance in this connection, we think, is the contrast between the testator's limited power to amend in his lifetime on a failure of issue of either line and the general power of amendment to be exercised "at any time" during the continuance of the trust by joint action of the children or their issue.

But it is contended by the respondent Nina H. Bigelow that even if the settlor did intend to grant powers of repeated amendment coextensive with the duration of the trust, effect cannot be given to that intent. She contends that such powers are powers of appointment of property, and that it is a rule of law that a power of appointment is exhausted as to any particular property interest by a single exercise, whatever the intent of the settlor or testator, and that in order to retain any control over further dispositions of the same interests the donee must reserve a new power in the instrument by which he exercises the original power. In this case the first amendment contained no such reservation. This respondent quotes from Sugden on Powers (8th ed., 1861) page 369: "It is now well settled that where the power is executed by *deed,* unless a power of revocation is reserved in that deed, the appointment cannot be revoked; no, not even if the original power expressly authorize the donee in the most unlimited terms to appoint and to revoke his appointments from time to time; for the law will not endure a prospective power like this, but on every execution a new power of revocation must be reserved." See to the same effect Farwell on Powers (3rd ed.) 306; *Worrall* v. *Jacob,* 3 Meriv. 256. And see *Saunders* v. *Evans,* 8 H. L. Cas. 721; *In re Hancock,* [1896] 2 Ch. Div. 173.

We will assume, but without deciding, that the powers of amendment in this case are powers of appointment. See *Thompson* v. *Pew,* 214 Mass. 520, 522; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 294 Mass. 551, 554; *McKallip's Estate,* 324 Penn. St. 438, 442; *Porter* v. *Commissioner of Internal Revenue,* 288 U. S. 436, 440, 441. See also *Clapp* v. *Ingraham,* 126 Mass. 200. The rule stated in Sugden and in Farwell appears to have been approved in most of the few American decisions in

point. *Slifer* v. *Beates,* 9 S. & R. 166, 182. *Ex parte Elliott,* 5 Whart. 524, 528. *Hidell* v. *Girard Life Ins. Annuity & Trust Co.* 12 Fed. Cas. 122. *Day* v. *Commissioner of Internal Revenue,* 92 Fed. (2d) 179. It is apparently included by the American Law Institute in its Restatement of Property, § 489. It is disapproved in *Morton* v. *Commissioner of Internal Revenue,* 109 Fed. (2d) 47, 51, 52, and our attention has been called to several cases in which similar powers to amend have been exercised more than once and where no question has been made as to the validity of such action. *Jones* v. *Old Colony Trust Co.* 251 Mass. 309. *United States Trust Co. of New York* v. *Commissioner of Internal Revenue,* 296 U. S. 481. *Helvering* v. *McIlvaine,* 296 U. S. 488. The doctrine in this extreme form appears to have originated in the case of *Hele* v. *Bond,* Prec. Ch. (Finch's ed.) 474, decided by the House of Lords in 1717, and more fully reported in Sugden on Powers (8th ed.). 908. Lord St. Leonards himself in the eighth edition of Sugden on Powers, at page 370, says that it is "impossible to frame any objection upon principle to a general power of revocation in the first deed, embracing all future executions: the power is only tantamount to what may still be done by repeatedly reserving new powers of revocation . . . ." He approves the decision in *Hele* v. *Bond,* however, apparently on the practical ground that it tends to promote certainty in conveyancing. It may be doubted today whether the doctrine of that case as applied within the framework of a modern trust is not more likely to prove a pitfall than a convenience. But if it is the law, it plainly defeats the intention of the settlor or testator and is therefore so far opposed to the present trend that it ought not to be extended by analogy or otherwise to new situations not within its established scope. We think the rule does not apply to this case. This is not an instance of a single power granted to one or more donees. By the terms of the indenture the powers are to be exercised by successive groups of persons composed of those who at any given moment are the issue of the settlor. There are as many separate powers as there are possible groups. Each group acts independently

of every other group. In the ordinary case the donee of a power can preserve the right of reappointment by a reservation of that right in any appointment that he makes. Here, however, if the rule of *Hele* v. *Bond* applies, the donees of later groups are helpless if the donees of the first group see fit to seize all the powers granted, even though the donees of later groups have been given in their own right powers of equal dignity by the same instrument. See *Bowen* v. *Chase*, 94 U. S. 812, 820, 821. We do not find any authority requiring such a result; nor does reason lead us in that direction. Because of the provisions of the indenture the exercise of the power granted to each group of donees may be deemed subject to the condition that the powers granted to later groups may also be exercised, thereby revoking the earlier appointments. A somewhat similar condition was held to have been implied from the situation of the parties in *Chadwick* v. *Doleman*, 2 Vern. 528.

We must not be understood as throwing doubt upon the proposition that commonly, at least in the absence of words indicating a contrary intent on the part of the donor, a single power of appointment is intended to be and can be exercised but once over the same property interest. This decision is limited to the circumstances of this case where, if the powers to amend are powers of appointment, the settlor, as we believe, intended to create a series of powers of appointment to be exercised successively during the entire duration of the trust.

In instructing the trustee as to its duties it has become unnecessary to pass upon the contention of the guardian *ad litem* that the first amendment exceeded the authority granted by the instrument.

The decree is reversed, and a decree is to be entered instructing the trustee that it is to distribute the share of the income of the trust to which the settlor's son would have been entitled, if he had not died, to his issue by right of representation.

Costs of these appeals as between solicitor and client are to be in the discretion of the Probate Court.

*Ordered accordingly.*