RHONDA COLLIER & others *vs.* STANLEY NAPIERSKI, administrator, & others.

Essex. February 4, 1970. — May 12, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Tenants in Common. Joint Tenants. Trust,* Interest of beneficiary.

Under an inter vivos trust, initially consisting of real estate, providing that the trustee should hold the trust property for the benefit of two named individuals, that a cotrustee or successor trustee could be appointed, and the trust amended, only with the consent of the beneficiaries, that they could terminate the trust if a vacancy in the office of trustee should not be filled, that the beneficiaries should "be entitled to the net income and the ultimate interest in the proceeds of" the trust property, and that upon the termination of the trust the trustee should "distribute the trust fund . . . among the person or persons then entitled . . . according to their respective interest," it was held that an absolute beneficial interest in the trust property was conveyed to each beneficiary as tenant in common and not as joint tenant, and that on the death of a beneficiary, his interest in the trust property did not terminate. [520, 521]

The words "conveyance in trust" in the provision of G. L. c. 184, § 7, that a conveyance of land to two or more persons "except a . . . conveyance in trust shall create an estate in common and not in joint tenancy" refer to trustees, not to beneficiaries. [521]

PETITION IN EQUITY filed in the Probate Court for the county of Essex on May 21, 1968.

The case was heard by *Pettoruto, J.*

*William F. O'Shea* for the respondents.

*Marvin R. Finn* for Rhonda Collier (*Joseph W. Hawes,* for Thomas Kaloust, with him).

SPIEGEL, J.    The petitioners bring this petition in equity for declaratory relief to establish that Alan J. Napierski's interest in the Arthur-Alan Realty Trust did not terminate on his death, "but became an interest available to his estate to be used . . . for the best interest of his estate, creditors or anyone else having an interest in said estate." They seek to enjoin the respondent John Napierski from "terminating, disposing of or . . . destroying said trust except in the ordinary operation of the business of said trust" and also seek to enjoin the respondent Stanley Napierski from "in any way transferring the interest of the decedent, Alan J. Napierski, in said trust." A final decree favorable to the petitioners was entered in the Probate Court from which the respondents appealed.

The material allegations of the petition are as follows. On April 29, 1966, the petitioners were passengers in an automobile owned by Stanley Napierski, insured by the Fireman's Fund Insurance Company and driven by the decedent, Alan J. Napierski.   The vehicle was involved in a collision due to the grossly negligent operation of Alan J. Napierski, which resulted in his death and "serious injuries" to the petitioners.   The insurance coverage of the vehicle is limited in amount.   The "combination of the claims, made as a result of said accident, against said estate of Alan J. Napierski, will more than exceed the amount" of coverage.   Alan J. Napierski was the beneficiary of a trust and his interest therein did not terminate on his death, but inured for the benefit of his estate "and

may be reached by the administrator of his estate for the benefit of his creditors."

The relevant portions of the Arthur-Alan Realty Trust are as follows: "2. The term 'trustee' hereinafter used shall mean not only John A. Napierski above-named, but whoever may be trustee or trustees for the time being. 3. The trustee shall hold the trust property for the benefit of Alan J. Napierski and the said John A. Napierski, both of said Swampscott. 4. The beneficiaries under this trust shall be entitled to the net income and the ultimate interest in the proceeds of the property held by said trustee in accordance with the terms of this instrument. . . . 6. The trustee shall have no power or authority to enter into any contract that shall bind or affect the beneficiaries personally, nor to call upon them for any payment whatsoever, but the trustees shall be entitled to indemnity against any and all liabilities which he may incur, or to which he may be subject out of the trust property, and may make any contract hereby authorized in such manner that the same and any liability thereunder shall be enforceable against the trust property, and all persons or corporations extending credit to, contracting with or having any claims against the trustee shall look only to the property of the trust for payment of any such contract or claim, or for the payment of any debts, damage, judgment or decree or for any money that may otherwise become due or payable from the trustee, so that neither any trustee or beneficiary, present or future, shall be personally liable therefor. 7. The trustee shall annually or oftener in his discretion pay net income from the trust property to the beneficiaries, provided, however, that the trustee may set aside before paying any dividends, whatever sum he sees fit as a sinking or contingent fund, to be applied to repaying loans made by the trustee, whether secured or unsecured by mortgages on the trust property or otherwise, to make repairs to and alterations in said property, provided against depreciation or losses and to meet extraordinary expenses. He may invest and reinvest said funds and any money he may have on

hand at any time in any securities he sees fit. His decision as to what constitutes net income and income and principal shall be conclusive. 8. The trustee shall maintain an accounting of all doings and make such accounting available, at their request, to the beneficiaries or their representatives for examination. . . . 12. The trustee herein named may with the consent of the beneficiaries, nominate such person or persons as he desires to be a co-trustee, or, his successor as trustee in case of resignation or death and the appointment shall be complete upon a written notice of said appointment and the acceptance thereof by the new trustee being filed in the Essex South District Registry of Deeds. If there should be a vacancy in the office of any trustee without a trustee having been appointed as above described, then the holder of the beneficial interest therein may: (1) appoint a new trustee by instrument in writing which shall become effective when said instrument and acceptance by the new trustee shall have been recorded with the Essex South District Registry of Deeds; or, (2) provide for the termination of this trust. 13. This trust may be amended or extended at any time or times by instrument, in writing, signed, sealed and acknowledged by the trustee with the consent of the beneficiaries, and recorded with the Essex South District Registry of Deeds. 14. Unless sooner terminated, this trust shall terminate at the expiration of twenty (20) years from the date hereof and the trustee shall transfer, convey, pay over and distribute the trust fund, free of trust, among the person or persons then entitled hereto according to their respective interest."

The principal question to be determined is the effect to be given the instrument executed by the settlor and trustee on January 8, 1963. The respondents contend that "the terminology used [in the trust] and other circumstances would lead to the conclusion that a joint interest among co-beneficiaries was intended and that the determination of Alan J. Napierski's interest as an interest in common was plainly wrong." Our review of the trust instrument leads us to a contrary conclusion. The intent of the creator of the

trust is the "controlling consideration" in determining what rights were created by the trust instrument, and that intention must be drawn from the language of the instrument and the attendant circumstances. *Dumaine* v. *Dumaine*, 301 Mass. 214, 218.

Under the terms of the trust a cotrustee or successor trustee cannot be designated,[1] nor can the trustee amend the trust[2] without the consent of the beneficiaries. In addition the beneficiaries have the power, under paragraph 12, to terminate the trust. Further, paragraphs 4 and 14 of the trust instrument respectively provide that the beneficiaries of the trust "shall be entitled to the net income and the ultimate interest in the proceeds of the property held by said trustee" and that "[u]nless sooner terminated, this trust shall terminate at the expiration of twenty (20) years . . . and the trustee shall transfer, convey, pay over and distribute the trust fund . . . among the person or persons then entitled hereto according to their respective interest." The above quoted language, together with the other powers bestowed on the beneficiaries, evidences an intent on the part of the settlor to convey an absolute beneficial interest in the trust property to the beneficiaries. *Chauncey* v. *Francis*, 181 Mass. 513, 514–516. *Hayward* v. *Rowe*, 190 Mass. 1, 2–3. *Goodwin* v. *New England Trust Co.* 321 Mass. 502, 505–506. This interpretation of the settlor's intent is further supported by the fact that the initial res of the trust was real estate. General Laws c. 183, § 13, provides that, "[i]n a conveyance or reservation of real estate the terms 'heirs,' 'assigns' or other technical words of inheritance shall not be necessary to convey or reserve an estate in fee. A deed or reservation of real estate shall be construed to convey or reserve an estate in fee simple, unless a different intention clearly appears in the deed." "It is to be assumed that the settlor was familiar with these provisions of law at the time he executed the trust instrument." *Dumaine* v. *Dumaine, supra.*

---

[1] Paragraph 12.

[2] Paragraph 13.

Moreover, nothing in the trust instrument indicates an intent on the part of the settlor to create a joint tenancy among the beneficiaries. The respondents argue that the provision of G. L. c. 184, § 7, which provides, "A conveyance or devise of land to two or more persons . . . *except a mortgage or a devise or conveyance in trust,* shall create an estate in common and not in joint tenancy,"[3] (emphasis supplied) implies that there shall be "a joint tenancy among co-beneficiaries." We believe that this argument is based on a misinterpretation of the statutory provision. The exception, a "conveyance in trust," to the above quoted general rule creating tenancies in common does not refer to the beneficiaries of a trust, but rather to the trustees. Scott, Trusts (3d ed.) § 143, p. 1096.

Taking all of the foregoing factors into consideration, we are of opinion that the judge correctly ruled that Alan J. Napierski's interest in the "Arthur-Alan Realty Trust did not terminate" on his death.

*Decree affirmed with costs of appeal.*

---

[3] Other than the exceptions above referred to, G. L. c. 184, § 7, as amended by St. 1954, c. 395, § 1, provides that there shall not be a joint tenancy "unless it is expressed in such conveyance or devise that the grantees or devisees shall take jointly, or as joint tenants . . . ."