ELIZABETH ANN EBITZ & others[1] *vs.* PIONEER NATIONAL BANK[2] & another.[3]

Hampden.    December 10, 1976. — March 22, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Trust,* Intent of beneficiary, Charitable trust.   *Words,* "Young men."

In the context of an entire trust instrument, a testator, in establishing a fund to assist "worthy and ambitious young men," did not intend to restrict the recipients to males. [210-211] QUIRICO, J., dissenting.

---

[1] Nancy Jean Kuiuila and Margaret Ann Gustavis intervened as parties plaintiff.

[2] Formerly The First National Bank of Northampton.

[3] The Attorney General is a named party defendant and, in brief and oral argument, supported the position of the plaintiffs. If there is any question about the standing of the plaintiffs, as female law students from Northampton, to contest the trustee's construction of the class of trust beneficiaries, the Attorney General has clear standing to raise this issue. See *Ames* v. *Attorney Gen.,* 332 Mass. 246, 250, 251 (1955).

BILL IN EQUITY filed in the Probate Court for the county of Hampden on August 10, 1972.

The case was heard by *Placzek*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Paul B. Sargent* for the Pioneer National Bank.

*Francis Hanify*, Assistant Attorney General, for the Attorney General.

*David Burres* for the plaintiffs.

HENNESSEY, C.J. This is an appeal from a Probate Court judgment which ordered the defendant bank (bank) as trustee under the will of Leigh Sanford to accept and process applications from females for financial assistance from the Richard W. and Florence B. Irwin Scholarship Fund (fund). The judgment further ordered the bank to apply the same eligibility criteria to female applicants and male applicants. The case was heard in the Probate Court under a statement of agreed facts in June, 1973.

The bank is trustee of the fund, a public charitable trust established pursuant to the will of Leigh Sanford.[4] The will

---

[4] The testamentary trust provides in relevant part:

[1] "All the rest, residue and remainder of my estate, real, personal and mixed, of whatever nature and wheresoever situate, which I may own or have the right to dispose of at the time of my decease, I give, devise and bequeath to The First National Bank of Northampton, of Northampton, Massachusetts, IN TRUST, NEVERTHELESS, for the following uses and purposes:

[2] "To establish the Richard W. and Florence B. Irwin Scholarship Fund, the net income from said fund to be used to aid and assist worthy and ambitious young men to acquire a legal education, so that they may be better fitted and qualified to become good citizens of their country, leaders in their community, and able members of the legal professions.

[3] "To be eligible for consideration for assistance from the fund, the student or students, as the case may be shall be residents of the City of Northampton. The method of granting aid and the selection of the students to receive such scholarships shall be determined from time to time by my said Trustee. It is my desire that as many students as possible be assisted by this fund, subject to the provision that my Trustee shall always maintain a sufficient reserve so that it will not be neces-

Ebitz *v.* Pioneer National Bank.

which was drafted in 1963 and allowed in January, 1970, directed that the fund "be used to aid and assist worthy and ambitious young men to acquire a legal education, so that they may be better fitted and qualified to become good citizens of their country, leaders in their community, and able members of the legal profession. To be eligible for consideration for assistance from the fund, the student or students, as the case may be shall be residents of the City of Northampton." The trust is dedicated to Judge Irwin and his wife. In view of Judge Irwin's expressed interest in the educational program of the Knights Templar, an organization of which he was a member, the testator suggests to his trustee "that it acquaint itself with the educational work of this organization and use its program as a guide in the carrying out of the trust imposed on it under this portion of my will." In addition, the testator expressed his desire to assist as many students as possible with the fund.

The plaintiffs are female law students who made timely applications to the bank for assistance from the fund. The bank rejected their applications on the ground that only male applicants are eligible for consideration. The Knights Templar maintain a revolving trust fund to assist worthy students in securing a higher education through loans.

---

sary for any recipient of said fund to leave school before his education is completed for lack of funds.

[4] "Richard W. Irwin was devoted to Northampton, to which he came as a young man, and where he lived and made for himself an enviable reputation as citizen, lawyer and Judge. He was ably assisted by his wife, Florence Bangs Irwin. Judge Irwin frequently expressed an interest in the educational program of the Knights Templar, of which organization he was a member for many years. It is suggested to my Trustee that it acquaint itself with the educational work of this organization and use its program as a guide in the carrying out of the trust imposed on it under this portion of my will.

[5] "In the event that there are no applicants for funds for a legal education, then the net income from said fund is to be used to aid and assist worthy and ambitious .young men to become doctors of medicine or osteopathy, or ministers of the Christian faith of any Protestant denomination."

We have added numbers to the paragraphs above to lend clarity to several references later in this opinion.

Such loans are made without regard to race, creed, color, sex or national origin.

The probate judge held that the testator did not intend to exclude female residents of Northampton from eligibility for fund assistance. The judge concluded from its context in the will that the term "men" in the phrase "worthy and ambitious young men" was employed in a generic sense and was not intended to exclude females, especially in light of the testator's reference to the educational program of the Knights Templar. In so deciding, the judge expressly avoided deciding whether a public charitable trust may constitutionally discriminate against women. The plaintiffs argue that the judge correctly construed the testator's intent and that a contrary construction would render the trust violative of the equal protection provisions of the United States and Massachusetts Constitutions.

The bank appeals from the construction of "young men" in the will of Leigh Sanford to include "young women." It argues that a testator need not ungraciously add "but not young women" to his trust for the benefit of young men in order to confine his bounty to young men. However, we hold on the facts in this case that the testator did not wish so to confine his bounty and therefore we affirm the judgment below.

The term "young men" is unambiguous unless, in the context of the entire instrument, an element of ambiguity is introduced. When such an element of ambiguity appears, we look at the entire trust instrument and to the general scheme it reveals in order to clarify the intended significance of the troublesome term. *Persky* v. *Hutner*, 369 Mass. 7, 15 (1975). See *State St. Trust Co.* v. *Crocker*, 306 Mass. 257, 260 (1940). Consideration of an entire instrument may evince a general testamentary scheme which indicates that particular terms have a meaning different from that which they normally convey when standing alone. *Ibid.* Thus, the very provisions which make ambiguous a normally unambiguous phrase can clarify the ambiguity.

The testator in this case suggested that his trustee use

the educational program of the Knights Templar as a guide for carrying out the trust established in his will (n.4, par. [4]). The Knights Templar program provides financial assistance to a broad class of graduate students without regard to their sex. This testamentary provision, hence, is highly significant, because a trustee cannot follow its guidelines and at the same time restrict fund benefits of the trust to young men.

In addition, in par. [3] (see n.4) of the trust the testator states as his goal assistance of "as many students as possible." Limitation of the pool of prospective applicants is inconsistent with this objective. Consequently, we do not find that the testator intended to exclude an entire group of prospective beneficiaries without express language to that effect. While the testator expressly restricted eligibility for use of the fund to Northampton residents he did not so limit eligibility to males. In fact, in describing eligibility and selection of applicants (n.4, par. [3]) he consistently used sex neutral terms which imply that the trustee should not restrict the class of fund recipients to males.

Finally, we note that the fund is dedicated not only to Judge Irwin, but also to Florence Irwin, his wife. This fact, together with the use of sex neutral terms, reference to the sex neutral program of the Knights Templar, and the stated testamentary goal of aiding as many students as possible, demonstrates a basic trust scheme to help finance the education of as many Northampton law students as the fund reasonably can without regard to their sex.

If some ambiguity should remain, we think the declared policy of the Commonwealth (art. 106 of the Amendments to the Massachusetts Constitution) regarding equal treatment of the sexes should lead us to resolve it in favor of the plaintiffs.

We conclude that Leigh Sanford intended that Northampton residents of both sexes be considered as eligible applicants for fund assistance and used the term "men" in its generic sense, which includes women. Because the tes-

tator's intent defines the rights in the fund created under the trust instrument, *Collier* v. *Napierski,* 357 Mass. 516, 519-520 (1970), we affirm the Probate Court orders to accept and process applications from females for assistance from the fund and to apply the same eligibility criteria to female and male applicants.

*Judgment affirmed.*

QUIRICO, J. (dissenting). In this case a testator, by his will executed in 1963 and allowed in 1970, created a trust fund "to aid and assist worthy and ambitious young men to acquire a legal education." The court by its opinion holds that the quoted language should be construed to have the same meaning which it would have if the testator had instead said that the trust was "to aid and assist worthy and ambitious young men *and young women* to acquire a legal education" (emphasis supplied). In so holding, this court affirms a judgment of the Probate Court to the same effect.

I respectfully dissent from this court's holding. "The fundamental rule for the construction of wills is to ascertain the intention of the testator from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to him at the time of its execution, and to give effect to that intent unless some positive rule of law forbids." *Hill* v. *Aldrich,* 326 Mass. 630, 632 (1951). I know of no "positive rule of law [which] forbids" the construction of the testator's will to mean exactly what he said he intended, viz., to create a trust "to aid and assist worthy and ambitious young men to acquire a legal education."

The trial judge held in part: "To exclude females as possible recipients of financial assistance from a trust fund established for the purpose of assisting qualified students interested in the pursuit of a legal education would constitute an unreasonable and arbitrary exclusion." The basic question for judicial determination here is what the testator intended by the language which he used. If he intended

the trust to be administered for the benefit of "young men" law students only, and not "young women" law students, it is not the function of the court to decide whether he was "unreasonable and arbitrary" in placing such a limitation on the expenditure of his own money. Surely it is not the law that a testator or donor may not bestow the benefit of his own funds on a class of persons of one sex to the exclusion of persons of a similar class but of the opposite sex, if that is his stated intention.

The judge further held: "A construction of the term 'men' in the testamentary trust to exclude females would raise the question whether State Courts may Constitutionally enforce a public charitable trust which discriminates against females unreasonably and arbitrarily. As set forth above, I have concluded that this question may and should be avoided by the construction I have placed upon the term 'men' which includes females as well as males." I do not view the issue in this case as clouded by any constitutional question. *Jackson* v. *Metropolitan Edison Co.,* 419 U.S. 345 (1974). *Moose Lodge No. 107* v. *Irvis,* 407 U.S. 163 (1972). *Evans* v. *Abney,* 396 U.S. 435 (1970). *Evans* v. *Newton,* 382 U.S. 296 (1966). *Pennsylvania* v. *Directors of City Trusts of Philadelphia,* 353 U.S. 230 (1957). *Pennsylvania* v. *Brown,* 392 F.2d 120 (3rd Cir.), cert. denied, 391 U.S. 921 (1968). *Jackson* v. *Statler Foundation,* 496 F.2d 623, 636-640 (2d Cir. 1973) (Friendly, J., dissenting from denial of rehearing), cert. denied, 420 U.S. 927 (1975). I therefore do not deem it necessary to engage in any attempt to review, rationalize, distinguish or apply any of the many decisions sometimes cited as justifying the construction of language in a particular manner on the basis that it is done for the primary purpose of avoiding possible constitutional questions.[1]

---

[1] "This rule of constitutional adjudication is normally invoked to narrow what would otherwise be the natural but constitutionally dubious scope of the language." *Textile Workers Union* v. *Lincoln Mills,* 353 U.S. 448, 477 (1957) (Frankfurter, J., dissenting). See *School Comm. of Springfield* v. *Board of Educ.,* 366 Mass. 315, 338 (1974), and cases cited (Quirico, J., concurring); *First Nat'l Bank* v. *Attorney Gen.,* 362 Mass. 570, 594-597 (1972), and cases cited (Quirico, J., concurring).

While this court reaches the same result as did the trial judge, it does so on different reasoning.

This court states in its opinion: "The term 'young men' is unambiguous unless, in the context of the entire instrument, an element of ambiguity is introduced." The court then purports to find an element of ambiguity in that part of the will which suggests that the trustee "acquaint itself with the educational work of . . . [the Knights Templar] and use its program as a guide in the carrying out of the trust imposed on it under this portion of my will." The court notes that the Knights Templar maintain a fund to assist worthy students by loans made to applicants "*without regard to* race, creed, color, *sex* or national origin" (emphasis supplied). Although the testator was thus aware of the fact that the Knights Templar loans were made without regard to "sex" (gender) when he referred to that program, in disposing of his own property he elected to state that the trust was "to aid and assist worthy and ambitious young men." He used no language to the effect that the beneficiaries were to be selected "without regard to sex." The very language on which the court relies to demonstrate an ambiguity in the will strengthens the view that the testator, knowing of the very broad scope of the Knights Templar program, carefully chose more restrictive language for the disposition of his own funds.

I would credit the testator, Leigh Sanford, with knowing exactly what he wanted to do with his trust fund, and with saying what he intended in clear and unambiguous language. I would not strain to attempt to find an ambiguity on which to justify the removal of restrictive language which he chose to use. Even though such a restriction may currently be in disfavor, it is not unlawful.

The court states in its opinion that "[i]f some ambiguity should remain, we think the declared policy of the Commonwealth (art. 106 of the Amendments to the Massachusetts Constitution) regarding equal treatment of the sexes should lead us to resolve it in favor of the plaintiffs." I do not agree that any ambiguity existed or remains. If any ambiguity remains, I do not believe that the 1976 constitu-

tional amendment declaring the policy of the Common-
wealth regarding equal treatment of the sexes is in any
way relevant to the 1977 interpretation of the words
"young men" either as of 1963, when Leigh Sanford
executed his will, or as of 1970, when the will was allowed
for probate. Furthermore, it is at least arguable, and per-
haps quite probable, that the mandate of the 1976 consti-
tutional amendment that "[e]quality under the law shall
not be denied or abridged because of sex" (art. 106), was
not intended to deprive, and does not deprive Leigh San-
ford or any other testator of the right to make a testamen-
tary disposition of his own property in trust for the benefit
of persons of one sex to the total exclusion of the other.
See Res. 1975, c. 26; Special Study Commission of the
Equal Rights Amendments, First Interim Report par. 1 D
(1976).

The court's decision may have effects far beyond the
single instrument being construed today. It is difficult to
imagine language less ambiguous than that used by Leigh
Sanford. If "young men" means "young women" in this
case, it will be exceedingly difficult to distinguish other in-
struments where similar language is used. Need countless
individuals who have spoken of "young men" or "young
women" in wills not yet probated seek further to clarify
their already clear intent? If such clarification is necessary,
what further action will suffice? Must those administering
trusts and estates seek court interpretation of gifts to
"young men" or "young women" to determine whether
they have misconstrued a settlor's or testator's intent? Are
the many scholarship funds to be distributed to "young
men" or "young women" students suddenly vague, am-
biguous, or against public policy? It is regrettable that
these uncertainties are being introduced into settled law.

This case brings to mind the following statement by Mr.
Justice Harlan in his dissent in *Evans* v. *Newton*, 382 U.S.
296, 315 (1966): "This decision, in my opinion, is more
the product of human impulses, which I fully share, than
of solid constitutional thinking. It is made at the sacrifice
of long-established and still wise procedural and substan-

tive constitutional principle." With appropriate paraphrasing, the same may be true of the decision of the present case. If the court's decision is "the product of human impulses," I share those impulses, but I subordinate them to Leigh Sanford's right to impose the restriction limiting the beneficiaries of his trust fund to "young men."