Fabricant, J.
INTRODUCTION
Plaintiffs, John Sorabella, III, and Debra Sorabella, brother and sister, brought this multi-count action against their stepmother and the estate of their father. Counts I, III and IV are against Edward DeFranceschi, Esq., as administrator of the estate of John Sorabella, Jr., alleging breaches of trust, fraudulent conveyances, and failure to pay certain debts chargeable to the estate. Count II is against Adrienne M. Sorabella, individually, alleging undue influence. This matter is before the court on defendant DeFranceschi’s motion to dismiss Count I for failure to state a claim upon which relief can be granted. For the reasons set forth below, the defendant’s motion to dismiss, as to Count I, is ALLOWED.
BACKGROUND
The allegations of the complaint, together with appended instruments, present the following facts. On *277 Januaiy 15, 1973, John Sorabella, Jr. and his first wife, the plaintiffs’ mother, Amelia Sorabella, executed a declaration of trust creating the Hobbs Brook Realty Trust. The declaration named themselves as both the sole trustees and, in paragraph 12, the sole beneficiaries. Other pertinent paragraphs of the declaration provided:
10. The trustees shall have full power and authority to pay to the beneficiary hereunder such sums from principal thereof as the trustee may from time to time in his sole discretion determine.
13. This trust may be altered, amended or terminated at any time by an instrument in writing signed by the trustees and recorded in Middlesex South District Registry of Deeds.
14. Unless sooner terminated as provided herein this trust shall terminate twenty years from the date hereof. Upon such termination or upon termination as provided in paragraph 13 hereof the trust property and all accumulations thereon shall be paid over and transferred to the beneficiaiy hereunder free and discharged of all trusts.
On May 29, 1990, John and Amelia executed an amendment to the declaration of trust, replacing paragraphs 12 and 14 with the following:
12. The beneficiaries of the trust are set forth in a separate Schedule of Beneficiaries, this day executed, and filed with the Trustee, and the interest of the beneficiaries shall be as stated in said schedule. The Schedule of Beneficiaries is specifically not filed, registered or recorded, but it shall be held by the Trustees.
14. Upon termination as provided in paragraph 13 hereof the trust property and all accumulations thereof shall be paid over and transferred to the beneficiaries hereunder free and discharged of all trusts.
The amendment did not alter any other provisions. The schedule of beneficiaries allocated the beneficial interest in the trust 20% to each of the plaintiffs and 30% to each of John and Amelia.
OnAugust 14, 1991, Amelia died. On December 23, 1991, John executed a signed memorandum stating that “I . . . hereby gift a 2% beneficial interest” in the trust to each of the plaintiffs. On the same date he revised the schedule of beneficiaries, reallocating the beneficial interest in the trust 37% to each of the plaintiffs and 26% to himself. This allocation reflected his 2% gifts, along with division of the 30% previously allocated to Amelia between the two children of the couple.
On Januaiy 3, 1992, John executed a second signed memorandum, again stating, that “I... hereby gift” a further 2% interest in the trust to each of the plaintiffs. On the same date, he again revised the schedule of beneficiaries, allocating 39% to each of the plaintiffs, and 22% to himself.
On June 26, 1993, John married his second wife, the defendant Adrienne Sorabella. In or about 1993, John was diagnosed with cancer, for which he received chemotherapy. He also suffered from diabetes and coronary arteiy disease, for which he was taking medication. The complaint alleges that John’s illnesses, or the side effects of his medications “render[ed] him incapable of making rational decisions concerning his personal and business affairs,” and that during 1994-1995, Adrienne coerced John into a series of transactions that effectively eliminated the plaintiffs’ beneficial interest in the trust. These transactions included: “executing and recording a trustee’s affidavit dated March 23, 1994 in which [he] attests to being the ‘sole beneficiaiy’ ” of the trust; conveying certain property of the trust without accounting to the plaintiffs for the proceeds; executing and recording a new declaration of trust dated Januaiy 9, 1995; executing a schedule of beneficiaries of the new trust, dated Januaiy 26, 1995, naming himself as sole beneficiary; conveying, a second parcel of property of the trust without accounting to the plaintiffs for the proceeds; and conveying a third parcel of property of the trust to himself for nominal consideration.
John died on June 10, 1997, leaving a will dated December 21, 1994, which the complaint alleges Adrienne procured by fraud and undue influence. The plaintiffs brought this action against Adrienne and the administrator of John’s estate on June 1, 1998. Count I, which is the subject of the present motion, alleges that John breached his fiduciary duty as trustee toward the plaintiffs, as beneficiaries, and that he fraudulently conveyed trust property. As relief for these alleged breaches, Count I seeks a declaration that each plaintiff is entitled to a 39% interest in the trust, the imposition of a constructive trust on all property traceable to the trust, reconveyance of property wrongly conveyed out of the trust, and an accounting of the proceeds of sales of trust property.
DISCUSSION
For purposes of a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), the allegations of fact in the complaint must be treated as true and the plaintiff is entitled to all favorable inferences. General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). Characterizations and conclusions of law, however, warrant no such consideration. See e.g. Boston & M.R.R. v. County Com’rs of Middlesex County, 239 Mass. 1227, 131 (1921). Documents appended to the complaint may be treated as incorporated therein. See e.g., Myers v. Boston Magazine Co., 380 Mass. 336, 339 (1980). Amotion to dismiss should be granted only if “it appears beyond doubt that the plaintiff can prove no set offacts in support ofhis claim which would entitle him to relief.” General Motors Acceptance Corp., 413 Mass. at 584, quoting Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
*278 The administrator argues that Count I fails to state a claim because it fails to show that the plaintiffs possessed a vested interest in the trust. Without such an interest, the administrator argues, the plaintiffs had no rights which their father, as trustee, had any duly to protect. The plaintiffs respond that their interest was vested, because the successive schedules of beneficiaries gave them specified shares.
Both sides rely on Markham v. Fay, 74 F.3d 1347 (1st Cir. 1996), in which the First Circuit, applying Massachusetts law, decided whether the interests of beneficiaries had vested in several inter vivos trusts. The touchstone of the analysis, the court held, is whether the trust instrument as a whole gives the settlor the power to eliminate the interests of all others in the trust. Id. at 1357. If it does, then the interests of beneficiaries are entirely contingent on the settlor’s continuing choice not to do so, and thus are not vested as long as the settlor holds that power. Id. at 1359.
Applying this basic principle, the Court determined that the non-trustee beneficiaries of two trusts before it, the Green Pastures and the Parker Hill Nursing Home Trusts, had no vested interests, because, although the trust instrument allocated specified shares to them, it did not contain any ascertainable limits on the powers of the settlortrustee. Id. at 1358. Rather, the settlor had reserved to herself, as trustee, the right “to alter, amend and revoke this Trust, in whole or in part, and to terminate the same.” Id. at 1357. That language, the Court ruled, gave the settlor-trustee “unrestricted and unconditional powers includ[ing] the right to substitute or strike out other beneficiaries, ... to vary the income or the principal paid to the beneficiaries while the trust continues, including the power not to pay them at all . . . and to completely revoke the trust.” Id. (citations omitted).
The Court considered it of no consequence that the trust instrument provided for the properly to vest in a named non-trustee beneficiary upon termination, because the unlimited powers of the settlor-trustee would enable her to amend the trust to delete that provision, as well as to pay all of the income and principal to herself before termination. Id. at 1357-58. The court observed that, “what is dispositive for these purposes is whether the trust instrument contained ascertainable limits on her power to pay income or invade principal for her benefit alone that the other beneficiaries could rely on to enforce any rights of their own.” Id. at 1358.
As to the other trust at issue, the Highland Avenue Nursing Home Trust, examination of the same factors led the Markham court to conclude that the interests of the beneficiaries had vested, because the settlor had not reserved to herself the right unilaterally to alter, amend or revoke the trust. Id. at 1362.
Here, as in the Green Pastures and Parker Hill Nursing Home Trusts, and in contrast to the Highland Avenue Nursing Home Trust, the plain terms of the trust instrument establish that the settlors reserved to themselves unlimited powers, including the powers to revoke or amend the trust, and to change its beneficiaries, or their interests, at any time, without the need of any consent from the beneficiaries. Although the settlor-trustees allocated specified interests to these plaintiffs, they remained free to change or revoke that allocation, as they chose. When Amelia died, John became the sole trustee, and the sole power to make such changes in beneficial interests, without any limitations, fell to him. Although he initially chose to allocate what had been Amelia’s interest to their children, along with a portion of his own interest, it appears that, near the end of his life, he made a different choice. Under the terms of the trust instrument, he was free to do so. Thus, these plaintiffs had no vested interests in the trust, and John had no fiduciary duty to them.[4] See Welch v. Terhune, 126 F.2d 695, 698 (1st Cir. 1942) (trustee has no fiduciary duty to refrain from exercising power to revoke).
The position of the plaintiffs here is similar to that of the disinherited widow in State Street Trust Company v. Crocker, 306 Mass. 257 (1940). There, after the death of the settlor, his children exercised a power, assigned to them under the terms of the trust instrument, to amend the trust to include the son’s wife as a beneficiary. Id. at 259. After the son died, however, under the terms of the instrument, the power to amend passed to his children, who exercised it to revoke their mother’s interest. Id. The Supreme Judicial Court held the revocation valid, despite its effect on the widow, since it occurred pursuant to the power to revoke expressly granted by the settlor. Id. at 264; see also State Street Bank & Trust Co. v. Reiser, 7 Mass.App.Ct. 633, 636 (1979) (interests of beneficiaries became vested when settlor’s power to amend or revoke died with him).
CONCLUSION AND ORDER
For these reasons, it is hereby ORDERED that defendant DeFrancheschi’s motion to dismiss Count I is ALLOWED.

Adrienne, of course, had a duty to refrain from coercing or exercising undue influence over her husband at a time when he was incompetent, to the detriment of the plaintiffs. Count II of the plaintiffs’ complaint alleges that she did so, and seeks recovery against her personally for that conduct. The present motion presents no challenge to Count II.