USTRUST COMPANY vs. JOHN J. KENNEDY.

Middlesex.   September 20, 1983. — November 23, 1983.

Present: KASS, CUTTER, & SMITH, JJ.

*Practice, Civil,* Summary judgment, Action removed to Superior Court. *Rules of Civil Procedure.*

The commencement of a civil action in a District Court, and not its later removal to the Superior Court, began the running of the twenty-day period which, under Mass.R.Civ.P. 56 (a), must elapse before a claimant may move for summary judgment. [133-134]

It lay within the discretion of the judge in a civil action to excuse the failure of the claimant to serve its motion for summary judgment upon the opposing party ten days before the time fixed for hearing, as required by Mass.R.Civ.P. 56 (c), where it did not appear that the opposing party had been handicapped thereby. [134-136]

A judge erred in not rejecting a supplementary affidavit filed by the moving party at the time of the hearing on a motion for summary judgment at which the opposing party was unrepresented due to the sudden illness of his attorney and, where the opposing party's affidavits, indulgently read, left material facts in dispute, a motion to vacate judgment should have been allowed. [136-138]

CIVIL ACTION commenced in the Third Eastern Middlesex Division of the District Court Department on February 22, 1982.

On removal to the Superior Court Department the case was heard by *Mitchell,* J., on a motion for summary judgment. A motion for relief from judgment was heard by *Dolan,* J.

*Peter A. Johnson* for the defendant.
*Paul E. Heimberg* for the plaintiff.

KASS, J.  Such is the technical nature of the arguments which the parties advance, that it is necessary to relate in detail the procedural history of the case, which has largely

to do with whether certain procedural irregularities invalidate a grant of summary judgment.

The action, founded on a promissory note for $15,463.48, was brought on February 22, 1982, by USTrust Company (the "bank") in the Third District Court of Eastern Middlesex. Before filing an answer, Kennedy, on March 17, 1982, removed the case to the Superior Court. Two days earlier, on March 15, 1982, the bank had mailed a motion for summary judgment to the District Court specifying March 26, 1982, as the date for hearing on the motion, but the motion does not turn up on the District Court docket and appears, instead, on the Superior Court docket with a filing date of March 19, 1982. The March 26, 1982, hearing date remained unchanged, a fact of which the bank's lawyer advised Kennedy's lawyer on March 19, 1982, by telephone and by a hand delivered confirmatory letter. On March 24, 1982, Kennedy filed opposition to the bank's motion for summary judgment founded on an assertion of disputed material facts claimed to be supported by affidavits and on the proposition that the motion was premature.

On March 26th, the hearing date, Kennedy's lawyer collapsed with congestive heart failure, underwent open heart surgery, and did not emerge from the hospital until June 4, 1982. Suffice it to say, he was not in court on March 26, 1982. The motion judge, who had no reason to know why Kennedy's lawyer was absent[1] and might have supposed that in a case on a note the defendant had given up the ghost, entertained the bank's motion. At the hearing, the bank filed an affidavit in support of its motion which shored up considerably materials previously filed. The motion was allowed, and a final judgment entered on April 29, 1982, although that judgment was not noted on the docket until June 1, 1982.

---

[1] The bank's lawyer did not know about his adversary's illness either, but apparently made no effort to find out why he was not in court. It does not appear from the record that Kennedy's lawyer had a partner or associate who could have been expected to cover for him.

After he was back in action, Kennedy's lawyer moved unsuccessfully under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), for relief from judgment before a Superior Court judge other than the one who had entered judgment. New counsel for Kennedy later (on September 16, 1982) moved for reconsideration, but that, too, failed. An appeal from the first denial was timely filed. Kennedy's first counsel, of course, was critically ill while the appeal period from the summary judgment was running. A single justice of the Appeals Court granted leave to Kennedy to file a claim of appeal late.[2]

We can turn now to the procedural irregularities which Kennedy argues should have caused the motion for summary judgment to be denied.

*First irregularity.* Kennedy has insisted throughout the proceedings that the bank's motion for summary judgment was premature because brought sooner than "[twenty] days from the commencement of the action." Mass.R.Civ.P. 56(a), 365 Mass. 824 (1974).[3] Twenty days had safely elapsed between the date the action commenced, February 22, and the date the bank first filed its motion, March 15,[4] but Kennedy urges that G. L. c. 231, § 104, as appearing in St. 1980, c. 539, § 4, sets a new commencement date because it provides: "The clerk shall forthwith transmit the papers and entry fee to the clerk of the [S]uperior [C]ourt and the same shall proceed as though then originally entered there."

We do not read G. L. c. 231, § 104, to establish a new commencement date for an action which has been removed to the Superior Court. So to construe the statute sets it on a collision course with Mass.R.Civ.P. 81(f), 365 Mass. 842 (1974), which provides that repleading is not necessary and that answers or other defenses or objections shall be filed

---

[2] That order also stayed execution on the judgment.

[3] Rule 56(a) provides in pertinent part: "A party seeking to recover upon a claim . . . may, at any time after the expiration of 20 days from the commencement of the action . . . move . . . for a summary judgment . . . ."

[4] As previously noted, the motion did not turn up on the Superior Court docket until March 19th.

within twenty days after receipt through service or other-wise of a copy of the initial pleading. To the extent that the presence of the word "then" in the phrase "as though then originally entered there" indicates the contrary, it is perhaps enough to call attention to Mass.R.Civ.P. 81(d), 365 Mass. 842 (1974), which provides: "In applying these rules . . . the terminology of any statute which also applies shall, if inconsistent with these rules, be taken to mean the analogous device or procedure proper under these rules." Any surface inconsistency between the statute and the rule disappears, in any event, upon consideration of the historical context of "as though then originally entered there." The phrase first appeared in St. 1912, c. 649, § 3 (which had to do with removals from the Boston Municipal Court), and in that act was followed by the words, "but may be marked for trial upon the lists of causes advanced for speedy trial by jury." It appears, therefore, that in context the phrase "as though then originally entered there" dealt with the position of the removed case on the Superior Court docket, and allowance was then made for expedited treatment on the trial list in recognition of the commencement of the case before the date when it appeared on the Superior Court docket. See also *Chandler* v. *Dunlop,* 311 Mass. 1, 4 (1942), in which the word "then" was given no significance.[5]

*Second irregularity.* Under Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), a motion for summary judgment is to be served "at least 10 days before the time fixed for the hearing." In this case the motion was filed on March 19th, seven days before the established hearing date of March 26, 1982. Even were we to grant that the bank had served the motion by mail on March 15th, a fact at best only inferable from the record, that would have been insufficient notice in view of the requirement in Mass.R.Civ.P. 6(d), 365 Mass. 748 (1974), that three days shall be added to any prescribed period when a notice or paper is served by mail. See *Kelsey*

---

[5] The docket entry for the complaint in the Superior Court is February 22, 1982, i.e., the original filing date in the District Court.

v. *Minnesota,* 565 F.2d 503, 506 n.2 (8th Cir. 1977); *Ham* v. *Smith,* 653 F.2d 628, 630 (D.C. Cir. 1981); 6 Moore's Federal Practice pars. 56-355 to 56-356 (2d ed. 1983).[6] Compare *Goldstein* v. *Barron,* 382 Mass. 181, 185 (1980).

Rules of procedure are not just guidelines. Their purpose is to provide an orderly, predictable process by which parties to a law suit conduct their business. Any litigant who fails to turn a procedural corner squarely assumes the risk that the rules infraction will be used against him and the rule vigorously enforced by the trial judge. Cf. *Points East, Inc.* v. *City Council of Gloucester,* 15 Mass. App. Ct. 722, 726 (1983). Every violation of a procedural rule, however, need not — and should not — require the perpetrator to be undone. The defect may be harmless. *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. 74, 79 (1975). See *Ikerd* v. *Lapworth,* 435 F.2d 197, 203 (7th Cir. 1970); 6 Moore's Federal Practice par. 56.14[1], at 58-357 (2d ed. 1983). Cf. *Sweda Intl., Inc.* v. *Donut Maker, Inc.,* 13 Mass. App. Ct. 914 (1982). On too many occasions rigidity in application of the rules would encumber, rather than direct, the course of legal proceedings. Trial judges, therefore, have discretion to forgive a failure to comply with a rule if the failure does not affect the opposing party's opportunity to develop and prepare a response. See *Alghanim* v. *Boeing Co.,* 477 F.2d 143, 148-149 (9th Cir. 1973). Cf. *Washington* v. *Cameron,* 411 F.2d 705, 710 (D.C. Cir. 1969). But see *Winbourne* v. *Eastern Air Lines, Inc.,* 632 F.2d 219, 223 (2d Cir. 1980), which rejected the possibility that a violation of the ten-day notice provision might be harmless and expressed the view that nothing in rule 56(c) suggests that it might be administered in a discretionary fashion; and *Capital Films Corp.* v. *Charles Fries Prod.,* 628 F.2d 387, 390-392 (5th Cir. 1980).

---

[6] In cases requiring construction and application of the Massachusetts Rules of Civil Procedure, we follow Federal cases construing and applying the Federal Rules of Civil Procedure, "absent compelling reasons to the contrary or significant differences in content." *Rollins Environmental Serv., Inc.* v. *Superior Court,* 368 Mass. 174, 180 (1975).

In the instant case the adverse party — Kennedy — did respond. He filed a challenge to the motion for summary judgment based on its prematurity and based on a counter-affidavit.[7] Nothing in the record, or for that matter, in Kennedy's brief on appeal suggests that the bank's failure to provide a ten-day notice affected his ability to develop and prepare a response or that he was handicapped in some other material respect by the short notice. While, as we have indicated, a motion judge almost always may insist upon compliance with the rules of civil procedure,[8] no error attended forgiving this irregularity when, on the facts, it made no difference to Kennedy.

*Third irregularity.* On the day of the argument the bank, apparently in response to Kennedy's affidavit (which seemed to say, in a somewhat inarticulate fashion, that Kennedy's note to the bank was a nonrecourse one, i.e., one on which Kennedy was not to be personally liable), filed a supplementary affidavit setting out the factual circumstances in which Kennedy had signed the note. Rule 56(a) provides that a party may move for summary judgment "with or without supporting affidavits." When a motion is to be "supported by affidavit, the affidavit shall be served with the motion." Mass.R.Civ.P. 6(c), 365 Mass. 748 (1974). Paragraph (c) of rule 56 provides that the adverse party may "prior to the day of hearing . . . serve opposing affidavits." A moving party should be held to at least that limited standard of forehandedness so far as supplementary material is concerned. As the Supreme Judicial Court said in another context: "We hold it unacceptable that one party should

---

[7] The counter-affidavit was an affidavit first filed by Kennedy in successful resistance to a real estate attachment in the District Court.

[8] An exception exists, for example, in cases where a party suffers from a handicap which prevents or delays compliance with the rules, e.g., a prisoner unable to respond within time limits. See *Hudson* v. *Hardy,* 412 F.2d 1091, 1094 (D.C. Cir. 1968); *Ham* v. *Smith,* 653 F.2d at 630. Another category of exception would be where the consequences visited upon the party violating the rules are wholly disproportionate to the severity of the infraction, as discussed in an analogous context in *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. at 79.

place such information before a judge intending that he rely on it in a contested matter without furnishing a copy of it to the other parties." *Olsson* v. *Waite*, 373 Mass. 517, 533 (1977).

Unlike the short notice which seemed to cause Kennedy no trouble, the late supplementary affidavit was a maneuver to which he could not effectively respond. The case was aggravated by his lawyer's sudden and serious illness, which resulted in no one present at the hearing to cry foul. In such circumstances, i.e., when the party offended by the rules violation is prejudiced, it is error not to reject the tardily filed affidavit. See *Beaufort Concrete Co.* v. *Atlantic States Constr. Co.*, 352 F.2d 460, 463 (5th Cir. 1965); *Wood* v. *Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1519 (9th Cir. 1983).

We are mindful that, with no one present at the hearing to argue about the lateness of the bank's further supporting affidavit, it was not incumbent upon the motion judge to raise the issue (although he was at liberty to do so and to reschedule the hearing). As we have observed, the wholly excusable absence of Kennedy's lawyer exacerbated the effect of the late affidavit. Had a lawyer been present to call the serious rules violation to attention, we doubt that the judge would have acted without affording Kennedy an opportunity to prepare a response to the bank's affidavit. For wholly understandable reasons, the motion for summary judgment was wrongly allowed.

There would be little point, however, in eradicating that procedural error if it were clear on the record that upon remand Kennedy was fated to lose. Of that, however, we are by no means certain. His affidavits, if indulgently read (as we, in accordance with *Salem Bldg. Supply Co.* v. *J.B.L. Constr. Co.*, 10 Mass. App. Ct. 360, 365 [1980], are to read the affidavits of a party opposing summary judgment), state that Kennedy signed the note as an accommodation to the bank and that the note is without consideration.[9] See *Leonard*

---

[9] It is undisputed that no money passed from the bank to Kennedy and that the antecedent obligations which the note appears to cover were not Kennedy's obligations.

v. *Woodward,* 305 Mass. 332, 335 (1940); *United Beef Co.*
v. *Childs,* 306 Mass. 187, 191 (1940). Cf. *Arlington Trust
Co.* v. *Pappalardo,* 383 Mass. 870 (1981); *Great Barrington
Sav. Bank* v. *Gens,* 8 Mass. App. Ct. 942, 943 (1979). The
affidavits also provide a basis for a defense that a bank offi-
cer made specific misleading statements, upon which Ken-
nedy relied, that the bank would look only to certain collat-
eral. But see *Boston Five Cents Sav. Bank* v. *Brooks,* 309
Mass. 52, 57-59 (1941). These assertions the bank contests
but that leaves material facts in dispute and the defendant
with some hope. *Community Natl. Bank* v. *Dawes,* 369
Mass. 550, 558-560 (1976). Accordingly, the procedural de-
fects which attended the allowance of summary judgment
are not without significance and the motion to vacate judg-
ment was improvidently denied. The judgment is reversed
and the execution on the judgment is to be returned to
court.

*So ordered.*