ELIZABETH MURPHY vs. JOHN KOTLIK & others.[1]

No. 92-P-138.

Suffolk. March 5, 1993. - April 28, 1993.

Present: KASS, KAPLAN, & GREENBERG, JJ.

*Zoning*, Lot.

A judge of the Land Court properly upheld the decision of a municipal
  zoning board of appeals and building inspector in granting a building
  permit to owners of a lot that ceased to be nonconforming after having
  been brought into compliance with dimensional requirements by the
  owners' acquisition of adjacent parcels, where the owners' action did
  not impair the status of any other property and was consonant with a
  general purpose of the zoning by-law to foster the creation of con-
  forming lots. [412-414]


CIVIL ACTION commenced in the Land Court Department
on July 11, 1990.

The case was heard by *Peter W. Kilborn*, J., on motions
for summary judgment.

*William A. Hahn* for the plaintiff.

*Henry A. Goodman* for the defendants.

KAPLAN, J. The Stoughton building and zoning inspector
issued a "foundation only" building permit for property
fronting on School Street owned by John and Denise Kotlik.[2]
Elizabeth Murphy, an immediate neighbor, appealed to the
Stoughton zoning board of appeals to revoke the permit, but
the board confirmed it. Murphy commenced an action in the
Land Court to annul the board's decision. Upon cross mo-

---

[1]Denise Kotlik, his wife; the Stoughton zoning board of appeals; the
town of Stoughton; and the Stoughton building and zoning inspector.

[2]The Kotliks had previously presented their plan to the Stoughton board
of health and planning board and received an ANR ("approval not re-
quired") endorsement under G. L. c. 41, § 81P, for plans not exhibiting a
"subdivision."

tions by the Kotliks and Murphy for summary judgment, the trial judge held for the Kotliks. Murphy appeals to this court. We affirm the judgment.

The following appeared on the cross motions. Mary Zabrosky, owner of a conforming lot of 56,522 square feet on School Street in a single-family residence district, in 1968 deeded an unimproved eastern part of it — called lot "1A" — to her mother-in-law Agnes Zabrosky, retaining the balance improved by a dwelling — lot "1." By this division, each of the lots became nonconforming: lot 1A by reason of a deficit in lot area (it had 23,556 square feet of the minimum 30,000) and lot width (seventy feet of the minimum 125 feet, measured at the front yard setback line of forty feet); lot 1 because of a deficit in lot width (lacking 12.8 of the 125 feet required at the forty-foot setback).

After the death of Agnes Zabrosky in 1978, lot 1A passed by will to a group of her relatives including the Kotliks; in 1987, the Kotliks bought the rest of the interests in the lot from the other relatives. Lot 1 came to Elizabeth Murphy by the death in 1980 of Mary Zabrosky. (John Kotlik and Murphy are cousins, as Agnes was grandmother to both of them.)

In 1988, the Kotliks sought to secure variances to enable them to build a single-family residence on lot 1A. Murphy opposed the attempt successfully: the statutory requirements for variance could not be satisfied.[3]

Thereupon the Kotliks acquired two additional parcels, called lots "A" and "B," each to the east of and adjacent to lot 1A. Barring the question raised by Murphy, to be dealt with below, lot 1A so enlarged became fully conforming: together, lot A (4,217 square feet), lot B (2,228 square feet), and lot 1A (23,556 square feet), totalling 30,001 square feet, supplied the lot area requirement; and lot B, fronting on School Street, provided an additional fifty-five feet of lot width, to make up the 125 feet. At this point the Kotliks applied for and secured the building permit whose legality is the issue on the present appeal. Lot 1 remained nonconform-

---

[3]The board granted the variances, but the Land Court annulled the decision.

ing for the deficiency of lot width, but the owner and property are protected against any action to enforce the zoning by-law against them by the running of time under G. L. c. 40A, § 7 (ten-year provision).

Murphy contended that lot 1A, even as extended by lots A and B, could not be regarded as conforming because it offended against § 4.1 of the Stoughton zoning by-law of 1964, in force at the time of the 1968 conveyance by Mary Zabrosky:

> "The lot or yard areas required for any new building or use may not include any part of a lot that is required by any other building or use to comply with any requirements of this By-Law, nor may these areas include any property of which the ownership has been transferred subsequent to the effective date of this By-Law if such property was a part of the area required for compliance with the dimensional regulations applicable to the lot from which such transfer was made."

Murphy rested on the second clause ("nor may," etc.) and claimed that the enlarged lot was disqualified because it comprised an area that lot 1 needed in 1968 to comply with the lot width requirement.[4]

The judge disagreed with Murphy. In his view, the building inspector could reasonably have concluded that Murphy's interpretation of the by-law was not required on the facts of the particular case, where the Kotliks and their predecessors were not involved in the vice at which the by-law was aimed, the Kotliks assembled a conforming lot, and there was nothing they could do to make Murphy's lot conforming.

We are not called upon to express any opinion, nor do we do so, about the correctness of this view.

Another basis for upholding the judge's decision and our affirmance arose from an event that occurred while the par-

---

[4]Murphy also cited § 5.2 of the zoning by-law of 1964 which prescribed height, area, yard, and off-street parking requirements. The judge held, correctly, that § 5.2 was irrelevant because the 1968 conveyance did not render lot 1 nonconforming in any of these respects.

ties' cross motions were pending decision: the Kotliks acquired an additional parcel of land to the east of and adjacent to Lot B along School Street.[5] This not only further enlarged the Kotliks' lot area by 891 square feet, but also extended the width of their lot by 22 feet along School Street for a total of 147 feet.

For lot 1 to have been conforming after the 1968 transfer, it would have had to extend along School Street for an additional 12.8 feet at a depth of forty feet. As noted, according to Murphy, the by-law prohibits the Kotliks from using part of lot 1A — an area 12.8 feet wide by forty feet deep which borders on lot 1 and fronts on School Street — because that area was required for compliance with the dimensional requirement of lot 1, the lot from which the 1968 transfer was made. But if by-law 4.1 is read to preclude the Kotliks from using this 12.8 by forty-foot area, the lot they have now assembled — conforming lot 1A minus the precluded parcel, plus lot A, lot B, and the new parcel — complies with all dimensional requirements. Therefore the Kotliks should be allowed to build. In the margin we quote the judge's remarks on this ground of decision.[6]

---

[5]Murphy objected to the addition to the record on summary judgment of an affidavit verifying the acquisition. The affidavit was properly received and considered, as Murphy had opportunity to respond. See *Woods* v. *Allied Concord Financial Corp.*, 373 F.2d 733, 734 (5th Cir. 1967), interpreting Fed.R.Civ.P. 6(b), cited in Smith & Zobel, Rules Practice § 56.5, at 353 (1977 & Supp. 1993). Contrast *USTrust Co.* v. *Kennedy*, 17 Mass. App. Ct. 131, 136-138 (1983).

[6]The judge wrote: "Defendant John Kotlik has submitted an Affidavit indicating that on February 6, 1991 he recorded a deed to him and his wife from the owners of the property on the other side of Lot B, conveying to the Kotliks a rectangular parcel measuring 22 feet along School Street and 40.5 feet deep, in effect pushing lot B 22 feet further along School Street. That parcel contains 891 square feet. If the width of that parcel, Parcel B, Plot 1A (all belonging to the Kotliks) and the width of Plaintiff's Lot are added together, the result is 259.2 feet, more than twice the required 125-foot width for each of two lots. Stated differently, for the 1968 conveyance to have left Plaintiff's Lot conforming (based on the measurements from the 1989 Plan), Plaintiff's Lot would have had to extend 12.8 feet further east along School Street, at a depth of 40 feet, thus adding an additional 512 square feet. That square footage, under plaintiff's reading of Section 4-1, would not be available to the Kotliks for lot area, but the

*Alley* v. *Building Inspector of Danvers*, 354 Mass. 6 (1968), cited by Murphy, is quite different from the present case. A developer bought a lot that conformed to the minimum area requirement and divided it into a smaller lot and a larger lot, keeping for himself the smaller lot, which was deficient in area. To remedy this problem, which he had evidently foreseen, he acquired a piece of an adjacent lot, leaving that lot deficient in area as well. He combined the piece with his nonconforming lot, making it conforming, and sought a building permit, which was finally denied. Making a lot conforming at the expense of depriving two other lots of area needed for compliance with the zoning by-law was held unacceptable. The judge below called the developer's conduct in *Alley* "zoning misbehavior." In the present case the Kotliks' acquisition of parcels renders their property conforming without any claim of impairing the status of any other property; besides, the Kotliks obviate in a reasonable way any difficulty arising from the Stoughton by-law.[7]

*Judgment affirmed.*

---

Kotlik lot, with the 891 square feet added, can give away the 512 square feet and still conform, with 380 square feet to spare (30,892 minus 512 minus 30,000). Neither the Building Inspector nor the Board considered the enlarged lot, but in the interests of judicial economy, and since the enlarged lot is not the sole basis of my decision, I have not acceded to plaintiff's objections about the February 6 Affidavit."

[7]The result of the present decision is to promote a general purpose of the zoning law — to foster the creation of conforming lots. In the same sense is Stoughton by-law § IV(B): "Except as herein provided, any existing conforming use, structure, or lot shall not by any action become nonconforming and any existing [non]conforming use, structure, or lot shall not become further nonconforming."