MICHAEL CARABETTA & another[1] *vs.* BOARD OF APPEALS OF
TRURO & others.[2]

No. 07-P-1438.

Suffolk. May 19, 2008. - December 4, 2008.

Present: CYPHER, BROWN, & FECTEAU, JJ.

*Zoning,* Lot, Lot size, Nonconforming use or structure. *Real Property,* Owner-
ship, Merger.

A Land Court judge erred in concluding that two lots that abutted did not
    merge for purposes of zoning when they were held in common ownership
    by the plaintiffs' predecessors in title, where a local zoning by-law did not
    apply to these lots [268-270]; however, where the plaintiffs had been able
    to carve out property abutting one of the lots that, if added to that lot,
    would bring it into conformity with zoning lot size requirements, this court
    discerned no impediment to the issuance of a building permit affecting the
    remainder of the plaintiffs' property [270-273].

CIVIL ACTIONS commenced in the Land Court Department on
June 20, 2005, and October 25, 2005.

After consolidation, the case was heard by *Karyn F. Scheier,*
J.

*Edward E. Veara* for the defendants.

*Christopher J. Snow* for the interveners.

*Donald R. Pinto, Jr.,* for the plaintiffs.

BROWN, J. Michael and Cathryn Carabetta own property in the
town of Truro (town) that abuts to the rear land owned by E.
Timothy and Monica O'Brien. The Carabettas seek to construct
a single-family home on their parcel. At issue in this appeal is
whether the O'Brien and Carabetta lots merged for purposes of
zoning when they were held in common ownership by Judith

---

[1]Cathryn Carabetta.

[2]Town of Truro; E. Timothy O'Brien, Monica R. O'Brien, Jordan C. Fox,
and Leslie P. Fox, interveners.

W. Greenberg and related entities between 1984 and 1997 and whether subsequent conveyances effectively "demerged" them. A judge of the Land Court concluded that either as a result of an indulgent local by-law or on principles of equity, strict application of the merger doctrine is not required.[3] The town appeals along with the O'Briens and abutters Jordan and Leslie Fox.

*Background.* In 1967, the town's planning board approved the "Lookout Bluff" definitive subdivision plan for certain registered property in the town's residential zoning district. Lot 22 on the plan consisted of 23,049 square feet, exceeding the town's minimum lot size at that time of 22,500 square feet. Effective August 7, 1972, the town amended its by-law to require a minimum of 33,750 square feet. In 1976, Henry and Ruth Greenblatt acquired lot 22 and in 1977 constructed a single-family residence on it.[4] The Greenblatts thereafter conveyed the improved lot 22 to Judith W. Greenberg on November 2, 1983.[5] By deed dated May 9, 1997, the trustees of the Greenberg Realty Trust conveyed lot 22 to E. Timothy and Monica R. O'Brien.

On June 14, 1979, the town's planning board endorsed the "Clear View Acres" definitive subdivision plan. Lot 3 of that plan contains 33,800 square feet and a portion of it abuts lot 22 of the Lookout Bluff subdivision to the rear of both lots. Lot 3 came into common ownership with lot 22 in February of 1984 when lot 3 was transferred to Judith Greenberg.[6] By deed dated

---

[3]The Land Court judge did not reach the issue whether the Carabettas' efforts to segregate a parcel of land sufficient to make the O'Briens' lot conforming would render the Carabettas' remaining land buildable.

[4]The judge noted that the defendants contend that the residence was built under the grandfather exemption in G. L. c. 40A, § 5A, the precursor to the current G. L. c. 40A, § 6, par. 4. There is no evidence that lot 22 was held in common ownership with any other lot after the minimum area was increased and before the house was constructed.

[5]Greenberg subsequently conveyed lot 22 to herself and George A. Greenberg as joint tenants by deed date September 21, 1985, and by deed dated July 18, 1988, the Greenbergs conveyed the property to themselves as trustees of the Greenberg Realty Trust.

[6]In a separate deed, Judith Greenberg subsequently conveyed lot 3 to herself and George A. Greenberg as joint tenants on September 21, 1985, and then the Greenbergs conveyed lot 3 to themselves as trustees of the Greenberg Realty Trust.

November 20, 2002, the trustees of the Greenberg Realty Trust conveyed lot 3 to the Carabettas.

The Carabettas' efforts to build on lot 3 have led to this litigation. The town and the abutters take the position that lot 3 is not entitled to a building permit because lot 22 and lot 3 merged for zoning purposes in 1984 and were not and cannot be "demerged" by the subsequent conveyance of lot 22 to the O'Briens. On this ground, the town denied the Carabettas' application for a building permit. The Carabettas appealed to the Land Court.

During the course of the appeal from that decision, the Carabettas were able to carve out a portion of lot 3 and a portion of the adjacent lot 4 of the Clear View Acres subdivision, now also owned by the Carabettas, to create a lot adjacent to lot 22 which, if added to lot 22, would make lot 22 conforming.[7] The plan was recorded in the Barnstable registry of deeds and created lots 3A and 4A, each containing 34,159 square feet, and "parcel B," containing 10,723 square feet identified as "not a buildable lot." The Carabettas proposed a deed restriction to preclude the use of parcel B in determining zoning dimensional compliance. The Carabettas thereafter requested a building permit for lot 3A, but the town's building inspector concluded that the proposed reconfiguration would not make lot 3A a buildable lot. The town's board of appeals affirmed the building inspector's determination. Although the appeal from this decision was consolidated with the original appeal, the Land Court judge did not reach this issue because she concluded that the lots had not merged.

*Discussion.* We first address the judge's ruling that the lots did not merge. It is well settled that "[a]djacent lots in common ownership will normally be treated as a single lot for zoning purposes so as to minimize nonconformities." *Preston* v. *Board of Appeals of Hull*, 51 Mass. App. Ct. 236, 238 (2001), quoting from *Seltzer* v. *Board of Appeals of Orleans*, 24 Mass. App. Ct. 521, 522 (1987). This general rule has been applied both prior to and "after the enactment of our current zoning enabling act, St. 1975, c. 808." *Preston* v. *Board of Appeals of Hull, supra,*

---

[7]The judge found that the O'Briens declined to accept any land to reduce or eliminate the nonconformity of lot 22.

citing Bobrowski, Massachusetts Land Use & Planning Law § 5.3.1, at 199 (1993). The statutory "grandfather" provision contained in G. L. c. 40A, § 6, incorporates this doctrine by providing protection from increases in lot area and frontage requirements only to nonconforming lots that are not held in common ownership with any adjoining land.[8] While a town may choose to adopt a more liberal grandfather provision, it must do so with clear language. See *Marinelli* v. *Board of Appeals of Stoughton*, 65 Mass. App. Ct. 902, 903 (2005).

The judge determined that section IX-A(2) of the by-law provides more liberal grandfather protection and renders lot 3 buildable. Section IX-A(2) of the by-law provides:

> "Any lot or parcel of land having an area or frontage of lesser amounts than required by this [b]y-[l]aw may be considered as coming within the requirements of this section, provided such lot or parcel of land was shown on a subdivision plan, or described by deed duly recorded or registered in the Barnstable County Registry of Deeds prior to the adoption of this [b]y-[l]aw and provided such lot or parcel of land has an area of not less than five thousand (5000) square feet with a frontage of not less than fifty (50) feet."

The judge concluded that the "failure of the [by-law] to explicitly require separate ownership places this matter within the line of cases characterized in *Preston* v. *Board of Appeals of Hull*, [*supra* at 240,] as 'involv[ing] indulgent local zoning by-laws, rather than G. L. c. 40A.' " In addition, although the lots at issue did not exist when the by-law was adopted in 1960, the judge interpreted section IX-A(2) as applying to lots existing

---

[8]General Laws c. 40A, § 6, par. 4, provides: "Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage." In *Preston* v. *Board of Appeals of Hull*, 51 Mass. App. Ct. at 244, we held that even where vacant lots were in separate ownership at the time of a zoning change that rendered them nonconforming, they nonetheless merge when they subsequently come into common ownership. There is no argument that lot 3 qualifies for relief under § 6.

not only when the by-law was adopted in 1960 but also to lots created after the by-law was adopted but which are rendered nonconforming by subsequent amendments to the by-law.

It may very well be that the by-law at issue implicitly rejects the merger doctrine. See and compare *Preston* v. *Board of Appeals of Hull*, 51 Mass. App. Ct. at 240-243 (concluding that if Legislature wanted to eliminate common-law principle of merger, it should have expressed that intent clearly), and *Marinelli* v. *Board of Appeal of Stoughton*, 65 Mass. App. Ct. at 903 (if municipal zoning code purports to establish more generous zoning provisions than those contained in G. L. c. 40A, § 6, it must do so expressly). We are not convinced, however, that section IX-A(2) applies to the lots in question, which were created after the 1960 adoption of the by-law. The clear language of section IX-A(2), which dates back to 1960 according to a parenthetical notation in the version contained in the record, refers to lots existing at the time the by-law was adopted. Section IX-A(2) makes no reference to any amendments to the by-law, in sharp contrast to other sections of the by-law, and no effort has been made to amend the section in that regard. That the parties so construed the by-law is evidenced by the fact the parties did not argue that section IX-A(2) provides relief for lot 3. Rather, the judge raised the issue sua sponte. While we find the town's focus on the definition of "lot" as including *all* adjacent land of a common owner unpersuasive, we are convinced that the plain language of the by-law compels the conclusion that the judge erred in applying section IX-A(2) to the lots at issue.

We turn, then, to the judge's alternative rationale that the peculiar facts and equities of this case militate against finding that lot 22 and lot 3 merged for zoning purposes. The judge noted that the lots derive from separate and distinct subdivisions, have never been conveyed in the same deed, are organized under different recording systems, and were always described as separate lots. We have said, however, that "[t]he 'usual construction of the word "lot" in a zoning context ignores the manner in which the components of a total given area have been assembled and concentrates instead on the question of whether the sum of the components meets the requirements of the by-law.' . . . A person owning adjoining record lots may not

artificially divide them so as to restore old record boundaries to obtain a grandfather nonconforming exemption; to preserve the exemption the lots must retain 'a separate identity.' " *Asack* v. *Board of Appeals of Westwood*, 47 Mass. App. Ct. 733, 736 (1999), quoting from *Lindsay* v. *Board of Appeals of Milton*, 362 Mass. 126, 132 (1972).[9]

Finally, the judge pointed to the inequity in preventing the Carabettas, who engaged in no zoning misbehavior, from building on a lot that complies with all of the zoning requirements while affording the O'Briens, who purchased an illegally nonconforming lot, permanent protection from enforcement of the zoning by-law.[10] Our review of the record reveals that we have applied the general rule against recreating old lots that resurrect a nonconformity even to subsequent owners. See *Smigliani* v. *Board of Appeals of Saugus*, 348 Mass. 794 (1965); *Giovannucci* v. *Board of Appeals of Plainville*, 4 Mass. App. Ct. 239 (1976); *Raia* v. *Board of Appeals of N. Reading*, 4 Mass. App. Ct. 318, 322 (1976); *Perez* v. *Board of Appeals of Norwood*, 54 Mass. App. Ct. 139 (2002); *Wells* v. *Zoning Bd. of Appeals of Billerica*, 68 Mass. App. Ct. 726, 735 (2007). In each of those cases, however, the subsequent owner purchased a lot that did not comply with current zoning requirements or participated in the creation of an abutting lot that did not comply with zoning requirements and most were seeking zoning relief. Here, the Carabettas purchased a lot depicted on an approved

---

[9]Neither the parties nor the judge directly address whether the lots maintained separate identities. While the judge's subsidiary findings suggest that the lots indeed may have retained their separate identities, in the absence of evidence of the Greenbergs' intent or use of the properties during their common ownership, how the properties were taxed during their common ownership, and legal argument on the issue, we cannot confidently conclude that they retained separate identities.

[10]Even assuming that the two lots merged when they were held in common ownership, the conveyance that "demerged" them was the conveyance to the O'Briens in 1997. The Carabettas were not involved in that transaction. The record reflects that the O'Briens were provided the opportunity but declined to purchase the adjoining land. The O'Briens chose, instead, to purchase an illegally nonconforming lot. So far as the record shows, however, the town took no steps to enforce the by-law while the O'Briens' house lot remained illegally nonconforming. It would appear that the town is now precluded, by the statute of limitations contained in G. L. c. 40A, § 7, from enforcing the by-law against the O'Briens.

subdivision plan that complied with all current zoning require-
ments and required no zoning relief, and the record reveals
nothing that would have put them on notice that their rear property
line abutted a nonconforming lot that was once held in common
ownership with the lot they purchased.[11] The town points to no
case where a similarly situated plaintiff was denied a building
permit. In these circumstances, it very well may be that the
Carabettas should not be barred from constructing on their fully
conforming lot.

We need not decide, however, whether in these circumstances
lot 3 should be deemed a buildable lot. That is because the
Carabettas have been able to carve out property abutting lot 22
that, if added to lot 22, would render it conforming. See *DiCicco*
v. *Berwick*, 27 Mass. App. Ct. 312, 314 (1989) (lot servient to
nonconforming lot only to extent necessary to cure nonconform-
ity); *Murphy* v. *Kotlik*, 34 Mass. App. Ct. 410, 412-414 (1993)
(reconfigured lot buildable where plaintiff acquired sufficient
land that he did not need to rely on any of the land that would
have merged with adjacent nonconforming lot). While this case
differs from *Murphy* in that the Carabettas seek to create the
necessary parcel from pieces of both lots 3 and 4, we believe it
is open to them to do so. So long as they do not use the newly
created parcel B to achieve the necessary square footage for lots
3A and 4A, we discern no impediment to a building permit for
lot 3A.[12] The town's insistence that the Carabettas *must* actually
convey parcel B to the O'Briens in order to be able to build on
lot 3A is unavailing. The town ignores that not only have the
O'Briens refused to participate in such a transfer, but the O'Briens
currently have no title or control over any portion of the Cara-
bettas' lot 3 which, the town contends, currently provides the
requisite area for their lot 22. Nothing would change in that
regard if the Carabettas substitute a portion of lot 3 and lot 4 to
"fictitiously" cure the O'Briens' nonconformity. Moreover, hav-
ing purchased an illegally nonconforming lot and refusing ef-

[11]The town's suggestion that previous unsuccessful efforts by the Green-
bergs to build on lot 3 surely would have been revealed to the Carabettas
lacks any factual support.

[12]While the property designated as parcel B is a narrow triangular shape,
we are aware of no aspect of the zoning scheme that concerns itself with the
shape of a lot's area, provided setbacks are met.

forts to make it conforming, the O'Briens' position in opposing construction on lot 3A is "so intrinsically inequitable that it should not prevail." *Hogan* v. *Hayes*, 19 Mass. App. Ct. 399, 404 (1985).

The judgment is vacated, and the matter is remanded for entry of a new judgment consistent with this opinion.

*So ordered.*