Billings, Thomas P., J.
This matter is before the Court on an appeal pursuant to G.L.c. 40A, §17 of a decision by the Zoning Board of Appeals of Billerica (“the Board”) upholding the determination of Billerica’s Building Inspector that a parcel of land belonging to the plaintiff, Shaw River, Inc. (“Shaw River”), was not a “grandfathered” buildable lot. Each party has moved for summary judgment. For the reasons set forth below, Shaw River’s motion is ALLOWED, and the defendants’ cross motion is DENIED.
BACKGROUND
The undisputed facts as revealed by the summary judgment record are as follows.
Shaw River owns a 10,000-square-foot parcel of land in Billerica, part of the 1915 Nuttings Lake Park subdivision and located within a “village residential” zoning district in the Town of Billerica (“the locus”). The locus is a square, 100 feet on a side, having 100 feet of frontage along Shady Hill Avenue and 100 feet of frontage along Blackwood Avenue. The locus in its present form was created in 1944, when John D. Cooke combined two smaller lots. It is identified on the Billerica’s Assessor’s Map as Parcel 61.
The Town of Billerica adopted zoning on August 1, 1945. The locus was vacant land, then and since. The 1945 zoning bylaw required a minimum lot size of 7,500 square feet and 75 feet of frontage; the locus was thus a buildable residential lot. It remained so when, on March 14, 1953, the Town increased the dimensional requirements of a buildable lot to 10,000 square feet and 100 feet, respectively.
The locus first became legally nonconforming in March of 1954, when the Town amended its bylaws to increase the minimum lot size from 10,000 to 15,000 square feet. The frontage requirement remained the same at 100 feet, and a lot depth requirement of 100 feet was added. Section 10 of the 1954 bylaw however, included (as had its predecessors) language that, along with grandfathering certain nonconforming lots, defined when adjoining lots in common ownership would be deemed merged. Specifically, Section 10 (referred to in the plaintiffs papers as the grandfather and “anti-merger” clause) provided:
This section, as amended shall not apply to any lot which, at the time this amendment becomes effective, is narrower at the street line or of lesser depth or area than herein provided, if:
1. A deed or plan of such lot was duly recorded in the Registry of Deeds before the adoption of this amendment;
2. The dimension of such lot were in conformance with the provisions of the Section 10 in effect at the time of recording in the Registry of Deeds; and
3. Such lot did not at the time of the adoption of this amendment join other land of the same owner which is available for use in connection with such lot. (Emphasis supplied.)
*443 PROVIDED HOWEVER, that only one single-family residence may be erected on any such lot containing less than 15,000 square feet and having a frontage of less than 100 feet or a depth of less than 100 feet. . .
On October 1, 1970, the Town again amended its zoning bylaw. With this amendment, Section 10 became Section 4.1, and the new Section 4.1 increased the minimum lot area to 30,000 square feet, the minimum frontage to 150 feet and the minimum lot depth to 150 feet for each lot situated in a Village Residence District. Now, the locus was nonconforming as to all three dimensional requirements. The 1970 bylaw, however, preserved the grandfather and “anti-merger” language from the 1954 bylaw, renumbering the former Section 10 as Section 4.4. Section 4.5 of the 1970 bylaw additionally provided that “only one residential building may be erected upon any individual lot, regardless of the size or dimension of the lot.”
On June 25, 1980, Richard J. Mello took title to the locus. Mello already owned a contiguous parcel of land located to the south of the locus, shown on Billerica’s Assessor’s Map as Parcel 63. He held both parcels of land in common ownership from June 1980 until February 16, 1984 when he sold Parcel 63 to Emma Foster. The Billerica zoning bylaw was not amended during this interval.
The Town did re-codify the bylaw on October 1, 1985. The 1985 bylaw did not change the dimensional and lot size requirements set out in the 1970 bylaw, but Section 4.4. of the 1970 bylaw became renumbered as Section 9.4. Section 9.4.D carried forward the grandfather and “anti-merger” language.
In May of 1999, however, the Town again re-codified its zoning bylaw, this time eliminating Section 9.4.D. In its place, it inserted the following language:
D. Except in Garden-style Apartment and Townhouse District and in Elderly Housing Overlay District, only one residential building may be erected upon any individual lot, regardless of the size of dimensions of the lot.
The dimensional requirements for lots in a Village Residential District—30,000 square feet, 150 feet of frontage, 150 feet minimum depth—remained the same.
Shaw River acquired the locus on March 11, 2004. In 2008 it sought a determination from the Building Inspector that the locus was a grandfathered residential building lot. On November 12, 2008, the Building Inspector declined to issue a building permit to Shaw River, claiming that the locus had “lost its grandfathered status in 1980 when it was held in common ownership with an adjoining lot.”
Shaw River appealed the Building Inspector’s decision to the Board. The Board upheld the decision that the locus was not a buildable lot. In May 2009, Shaw River filed the current appeal, asserting that the Board’s decision is arbitrary, based upon legally untenable grounds, insufficient as a matter of law, and inconsistent with the intent of the Billerica Zoning Bylaws and G.L.c. 40A. It seeks an order from this court compelling the Building Inspector to issue a building permit so that Shaw River may construct a single-family dwelling upon the locus.
In its motion for summary judgment, Shaw River asserts that the locus is grandfathered under the provisions of G.L.c. 40A, §6 and the Town’s Zoning Bylaws. The Town opposes, arguing that the locus cannot be grandfathered under the statute because the locus and the adjoining lot merged into one lot in 1980 when they came into common ownership under Mr. Mello, and it points out that the current Zoning Bylaws do not provide grandfathering lot protection to the locus.
DISCUSSION
As recounted above, the Billerica zoning Bylaw, when first enacted in 1945, provided that its dimensional requirements would not apply to a lot appearing on a previously recorded deed or plan, so long as “such lot did not at the time of the adoption of this by-law adjoin other land of the same owner which is available for use in connection with such lot.” Amendments in 1953, 1954, and 1970 increased the dimensional requirements, but preserved the grandfathering language except that the words “adoption of this amendment” were substituted for the original’s “adoption of this by-law.”
Read literally, and as interpreted by the Board of Appeals for many years, the bylaw dealt with the merger doctrine in “snapshot” fashion: so long as adjoining lots were separately owned on the date of each amendment, they could merge and separate during the periods between amendments, without consequence. This result may or may not have been intended, but it is not the Court’s place to “question the wisdom of the town’s zoning enactments.” Lee v. Board of Appeals of Harwich, 11 Mass.App.Ct. 148 154 (1981).
The “snapshot” approach of the Billerica bylaw runs contrary to the general doctrine of merger, under which (1) “even where vacant lots were in separate ownership at the time of a zoning change that rendered them nonconforming, they nonetheless merge when they subsequently come into common ownership,” Carabetta v. Board of Appeals of Truro, 73 Mass.App.Ct. 266, 269 n.8 (2008), and (2) once merged, lots do not “de-merge” when by later conveyance they revert to separate ownership. Carabetta at 266; see Asack v. Board of Appeals of Westwood, 47 Mass.App.Ct. 733, 736 (1999) (“[a] person owning adjoining record lots may not artificially divide them so as to restore old record boundaries to obtain a grandfather nonconforming exemption; to preserve the exemption the lots must retain ‘a separate identity’ ”; citation omitted).
*444 A Town is free, however, to adopt a grandfather provision that is more liberal than Chapter 40A—in-cluding its common-law accretion of the merger doctrine—provided it does so “with clear language.” Carabetta, 73 Mass.App.Ct. at 269. Billerica’s bylaw, up until the 1999 amendment, would seem to be one of those “indulgent local zoning by-laws” whose language “implicitly rejects the merger doctrine,” id. at 269-70, quoting Preston v. Board of Appeals of Hull, 51 Mass.App.Ct. 236, 240 (2001)—or at least, so rearranges the rule that its application to a particular case will be more a matter of chance than of design. In any event: so long as the “snapshot” language remained in the bylaw, Lots 61 and 63 were each separate, grandfathered, buildable lots, because they were not in common ownership on the date of any amendment to the bylaw.
Then came the 1999 amendment, which—without increasing area, frontage or setback requirements for residential lots—deleted the former section 9.4.D of the bylaw, this being the last codification of the bylaw’s grandfathering and “anti-merger” provisions. From that time forward, grandfathering and merger have been exclusively matters of state law. The issue here, then, is whether, as a matter of state law, the merger doctrine may look backward. More specifically: where one grandfathered lot came into common ownership with an adjoining, available, grandfathered lot, but the two lots were later re-severed, all during a period when they were not considered merged under the terms of an “indulgent local zoning by-law[ ],” are they considered to be merged once the indulgence is withdrawn?
Where a bylaw is silent on the subject, grandfathering of lots which do not meet current dimensional requirements is governed by Chapter 40A, section 6, fourth paragraph. The first sentence of the paragraph provides:
Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage.
The SJC has “interpreted the ‘time of recording or endorsement’ to mean the time of ‘the most recent instrument of record prior to the effective date of the zoning change.’ ” Rourke v. Rothman, 448 Mass. 190, 192 (2007), quoting Adamowicz v. Ipswich, 395 Mass. 757, 762 (1985). One therefore looks to “the status of the lot immediately prior to the zoning change.” Id.
The relevant “zoning change” here is the 1999 amendment which removed the grandfathering and “anti-merger” provisions. The most recent instrument of record at that time was either the June 25, 1980 deed by which Richard Mello acquired Parcel 61 (adding it to the contiguous Parcel 63, which he also held), or perhaps his February 16, 1984 conveyance of Parcel 63 out to Emma Foster. On either date, Parcel 61 was a separately buildable lot under the Billerica Bylaw, thanks solely to the “anti-merger” clause. As the SJC held in Rourke, however, “conformity] to then existing requirements” is examined in light of the lot’s grandfathered status, not whether it met the dimensional requirements in effect for newly created lots.[2]
Lot 61 thus, at the time of the 1999 zoning amendment, met all three requirements for grandfathering under G.L.c. 40A, §6, para, fourth, first sentence: “the lot (1) had at least 5,000 square feet with fifty feet of frontage, (2) ‘was not held in common ownership with any adjoining land,’ and (3) ‘conformed to then existing requirements.’ ” Rourke, 448 Mass. at 192, quoting G.L.c. 40A, §6. It therefore was—and remains—a buildable lot, notwithstanding that for several years in the early 1980s it was held in common with Lot 63.
ORDER
For the foregoing reasons, the plaintiffs Motion for Summary Judgment is ALLOWED, and the defendants’ Cross Motion for Summary Judgment is DENIED.
Judgment shall enter, reversing the April 15, 2009 decision of the Billerica Board of Appeal (filed April 27, 2009), and declaring that the plaintiffs land described in a deed dated July 8, 2003, and recorded in the Land Registration Division of the North Middlesex Registry of Deeds, Certificate ofTitle No. 37190, Land Registration Book 188, Page 379 and shown on the Billerica Assessor’s Map as Plate 87, Parcel 61, is grandfathered as to dimensioned requirements, and is therefore a buildable lot.

In so holding, Rourke overturned decades of Appeals Court precedent, which had held that a lot “conformed to then existing requirements” only if it met those requirements without benefit of grandfathering. See Rourke v. Rothman, 64 Mass.App.Ct. 599, 604 (2005), rev'd, 448 Mass. 190 (2007), citing Tsagronis v. Board of Appeals of Wareham, 33 Mass.App.Ct. 55, 61 (1992), rev'd on other grounds, 415 Mass. 329 (1993), and Ferzoco v. Board of Appeals of Falmouth, 29 Mass.App.Ct. 986, 986-87 (1990).