APPEALS COURT 
 
 DAVID A. DECKELBAUM, trustee,[1] vs. ZONING BOARD OF APPEALS OF PROVINCETOWN & others [2]

 
 Docket:
 23-P-443
 
 
 Dates:
 March 13, 2024 - October 28, 2024
 
 
 Present:
 Massing, Singh, & Grant, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Zoning, Variance, Nonconforming use or structure, By-law. Estoppel
 
 

             Civil action commenced in the Land Court Department on October 4, 2018.
            The case was heard by Michael D. Vhay, J.
            Alan E. Lipkind (Gregory S. Paonessa also present) for the plaintiff.
            Anthony T. Panebianco for Siobhan Carew & another.
            GRANT, J.  This action concerns the reconstruction of a deck (original deck) that previously spanned the width of the area between two waterfront properties, 99 Commercial Street and 101 Commercial Street, in Provincetown (town).  In 2014, David A. Deckelbaum, trustee of the Huey Trust, took title to 101 Commercial Street and, in the course of a renovation project for that property, caused the original deck to be destroyed.  Ultimately, the owner of a portion of 99 Commercial Street, Siobhan Carew, as trustee of the 99 Commercial Street Realty Trust, and her daughter, Michela Carew-Murphy (collectively, the Carews), reconstructed the deck (new deck) at 99 Commercial Street in the same footprint of the original deck -- except that it did not connect to 101 Commercial Street, but stopped 1.3 feet away from the property line.  After completion of the new deck, the town informed the Carews that they needed a variance because the new deck was not set back six feet from 101 Commercial Street.  Deckelbaum opposed the variance, even though the original deck had included no setback at all.  The town's zoning board of appeals (board) granted the variance, and on Deckelbaum's appeal a judge of the Land Court, in a thoughtful and comprehensive decision, found that Deckelbaum had standing to challenge the variance but affirmed the grant of the variance.  We conclude that where Deckelbaum was responsible for destroying the original deck, that destruction amounted to a circumstance especially affecting the shape of the structure at 99 Commercial Street, and as a result, the variance was properly granted.
            Background.  We set forth the facts as found by the judge after trial, supplemented by our own review of the documentary evidence.  We accept the judge's findings of fact "unless they are 'clearly erroneous' or there is 'no evidence to support them.'"  Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 475 (2012), quoting Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 383 (2009).
            For many years, at least since the 1920s and through late 2015, the exteriors of the buildings at 99 and 101 Commercial Street were unchanged.  An alley runs from Commercial Street to the waterfront, separating 99 and 101 Commercial Street.  Beginning part way down the alley, the original deck occupied the alley, at first at grade level but, because the land sloped toward the water, eventually several feet above grade where it extended beyond the seaward edges of the 99 and 101 Commercial Street buildings.  The original deck joined the buildings and also connected them to a pier and other 99 Commercial Street condominium units.  It provided essential access at 99 Commercial Street to three residential units and two areas of public accommodation.  Since before 2015, a restaurant known as "Sal's Place" occupied the ground floor of 99 Commercial Street and seasonally used the adjacent portion of the original deck for seating for sixteen diners.  In addition, the original deck served as one way to get to the pier, to which the public is entitled to access because it is situated over regulated coastal tidelands.
            Deckelbaum hired Cape Cod Docks, Inc. (contractor), to perform construction work on 101 Commercial Street.  During that project, on November 4, 2015, the contractor destroyed and removed the remnants of the original deck.  The judge found that Deckelbaum's agent, the contractor, was responsible for the destruction of the original deck.  The Carews' predecessor threatened legal action.  The contractor promised to "replace the deck and vertical retaining wall, within the exact same footprint of and elevation as what existed, and assume all costs" associated with the restoration.  Indeed, the contractor later committed in writing to restoring the original deck -- with the work to be "completed by April 15th, 2016."  In reliance on the contractor's commitment, Carew, as trustee, purchased 99 Commercial Street's condominium units 4-7, including the site of Sal's Place adjacent to the location of the original deck.[3]  In 2016 and 2017, the restaurant provided outdoor seating on the ground where the original deck had stood.
            The Huey Trust, of which Deckelbaum is trustee, has a sole beneficiary, Gregory Connors, who uses 101 Commercial Street as a second residence.  Connors learned of the demolition of the original deck shortly after it happened and testified at trial that he had no objections in 2015 and 2016 to the contractor's rebuilding the original deck.  The contractor never replaced the deck.
            Beginning in the summer of 2017, the Carews undertook to replace the deck themselves.  From the town's conservation commission (commission), they obtained a negative determination of applicability, which permitted them to proceed with restoring the deck subject to certain conditions.  Deckelbaum appealed to the Department of Environmental Protection (DEP).  DEP issued a superseding determination of applicability requiring the Carews to obtain from the commission an order of conditions under the Wetlands Protection Act, G. L. c. 131, § 40.  The Carews revised their plans for the new deck and obtained that order of conditions.
            In 2018, more than two years after demolition of the original deck, the Carews built the new deck so that it extended to within 1.3 feet of the 101 Commercial Street property line.  After construction was complete, the town informed the Carews that because the new deck was not set back six feet from the 101 Commercial Street property line, a variance was required.[4]  The Carews applied for a variance from the setback requirement, which the board granted, concluding that 99 Commercial Street has "unique structural" considerations, and that rebuilding the deck facilitated access by persons with "mobility challenges."
            Deckelbaum appealed to the Land Court.  Following an eight-day trial which included a view, the judge found that "[t]he [new] [d]eck is within the same footprint of the [original] [d]eck" -- except that it does not span the full width of the alley to 101 Commercial Street.  He also found that the current uses of the new deck are identical to those of the original deck.
            Nonetheless, as to standing, the judge found that Deckelbaum, who had presumptive standing as an abutter, alleged harms from the new deck including increased noise and increased risk of fire spreading from 99 Commercial Street.5  The judge found that the Carews successfully rebutted Deckelbaum's presumption of standing by proving simply that "in 2015-2016, Mr. Connors assented to reconstruction of the [original] [d]eck" and the new deck is within the same footprint of the original deck.  Even without that presumption of standing, the judge determined that he was "forced to conclude" that Deckelbaum had proffered sufficient credible evidence to substantiate his claims of particularized injury by testifying that the noise levels at and risk of fire spreading to 101 Commercial Street were greater after construction of the new deck than they had been during the period between 2016 and 2017, when there was no deck.  The judge noted that "[t]hese facts have a strong estoppel flavor," and that Massachusetts zoning cases do not address "whether estoppel properly factors in assessing a party's standing under [G. L. c. 40A,] § 17."  On appeal, the Carews do not contest the judge's finding of standing, and we leave for another day the question whether estoppel principles are relevant in assessing a party's standing.
            Turning to the merits, the judge affirmed the variance, concluding that the loss of the original deck resulted in hardship to the residents and users of the pier units, the users of the pier's public viewing areas, the patrons of Sal's Place, and the Carews, and that
"owing to the arrangement of the remaining structures on 99 Commercial Street, the unusual circumstances surrounding the loss of the [original] [d]eck (and its role in public access), and the [zoning bylaw]'s allowance of restoration of structures that have suffered catastrophes, granting the [v]ariance wouldn't nullify or substantially derogate from the intent or purpose of the [bylaw]."
            Discussion.  Pursuant to G. L. c. 40A, § 10, the board had the power to grant the Carews a variance for reasons including that "a literal enforcement of the provisions of the . . . bylaw would involve substantial hardship, financial or otherwise, to the [Carews], and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such . . . by-law."  Section 10 requires that the circumstances giving rise to such substantial hardship must be ones "especially affecting such land or structures but not affecting generally the zoning district in which it is located."  See, e.g., Kirkwood v. Board of Appeals of Rockport, 17 Mass. App. Ct. 423, 428-429 (1984) (based in part on view, judge determined that waterfront lot was not unique because it contained ledge); Planning Bd. of Watertown v. Board of Appeals of Watertown, [5] Mass. App. Ct. 833, 834 (1977) (mere fact that railroad tracks ended at locus did not warrant conclusion that setback requirement worked greater hardship on landowner than others in area).  At issue here is whether special hardship related to the structure at 99 Commercial Street justified relief by variance of the setback requirement.
            In affirming the variance, the judge concluded that the facts before the board were sufficient to find that substantial hardship to the Carews justified the variance because of the unique structural considerations of 99 Commercial Street, including that the deck provided access to the pier.  In addition, the judge based his finding of substantial hardship at least in part on Deckelbaum's conduct.  Based on the evidence at trial, the judge found that the destruction of the original deck was "an act of trespass" by Deckelbaum's contractor and amounted to an "alteration" that impermissibly decreased the accessibility of Sal's Place in violation of G. L. c. 22, § 13A.  See 521 Code Mass. Regs. § 3.3.4 (2006).  The judge concluded that "the [v]ariance permitted replacement of a structure that, by statute, shouldn't have been removed in the first place."
            We conclude that Deckelbaum's removal of the original deck created "circumstances relating to the . . . shape . . . of [the] structure[]" at 99 Commercial Street "especially affecting" that structure differently from others in the zoning district.  G. L. c. 40A, § 10.  See Furlong v. Zoning Bd. of Appeals of Salem, 90 Mass. App. Ct. 737, 740 (2016) (because of peculiar shape of property, setback variance necessary to prevent safety hazards that would result if marina building was located near boat lift).
            We agree with the judge that the conduct of Deckelbaum was an appropriate factor to consider in evaluating whether a variance was warranted in order to prevent a substantial hardship to the Carews.[6]  The question of hardship, and the extent of an identifiable hardship, inherently involves a weighing of equitable considerations.  In the unique circumstances of this case, as the judge recognized, the loss of the deck, and any resulting hardship, was occasioned by the wrongful conduct of Deckelbaum.  A party "should not be allowed to benefit from his own wrongdoing."  Butts v. Zoning Bd. of Appeals of Falmouth, 18 Mass. App. Ct. 249, 254 (1984).  "In Massachusetts the principle of equitable estoppel functions 'to prevent one from benefiting from his own wrongdoing and to avoid injustice.'"  Renovator's Supply, Inc. v. Sovereign Bank, 72 Mass. App. Ct. 419, 426 (2008), quoting Harrington v. Fall River Hous. Auth., 27 Mass. App. Ct. 301, 307 (1989).
            Since at least the 1920s, the functional original deck straddled the area that is now the alley between 99 and 101 Commercial Street, extending to the waterfront.  Deckelbaum, as owner of 101 Commercial Street, was responsible for the destruction of the original deck.  Deckelbaum's contractor promised to reconstruct the deck on 99 Commercial Street and later reneged.  The Carews relied on the contractor's promise when they bought Sal's Place and delayed replacing the deck themselves until after it no longer qualified as a preexisting nonconforming use.  See note 4, supra.  Connors, the sole beneficiary of the trust, acquiesced to the reconstruction of the deck.  Finally, the new deck has the same footprint as the original -- with the exception of a 1.3 foot gap between the new deck and 101 Commercial Street.  In these circumstances, where Deckelbaum opposes the zoning variance for the new deck that was made necessary only because he destroyed the original deck, his position is "so intrinsically inequitable that [he] should not prevail."  Carabetta v. Board of Appeals of Truro, 73 Mass. App. Ct. 266, 273 (2008), quoting Hogan v. Hayes, 19 Mass. App. Ct. 399, 404 (1985).  See Selectmen of Stockbridge v. Monument Inn, Inc., 14 Mass. App. Ct. 957, 958 (1982).[7]  The variance criteria were satisfied.
Judgment affirmed.
 
--------------------------------------------
 
            [1] Of the Huey Trust.
            [2] Siobhan Carew, trustee of the 99 Commercial Street Realty Trust, and Michela Carew-Murphy.
            [3] Units 4, 5, and 6 are located above Sal's Place (unit 7).
            [4] The Carews' construction of the new deck occurred too late for it to qualify as a preexisting nonconforming use under G. L. c. 40A, § 6, and sections 3115 and 3120 of the town's zoning bylaws.
            [5] Deckelbaum also alleged that the new deck caused increased health risks, including the spread of the COVID-19 virus, and increased risk of storm damage.  The judge rejected those two alleged harms as issues not protected by the zoning bylaw.
            [6] Deciding the case as we do, we need not retrace the judge's steps analyzing such questions as whether the board properly allowed the variance on the grounds that construction of the new deck was necessary to prevent hardship to persons including patrons of Sal's Place, residents of 99 Commercial Street, and members of the public who access the pier.
            [7] The Carews' request for costs and attorney's fees pursuant to Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019), is denied.  Although Deckelbaum's arguments are unpersuasive, they are not frivolous.  See Marabello v. Boston Bark Corp., 463 Mass. 394, 400 (2012).