17 ALBION STREET TRUST, IN THE MATTER OF, 100 Mass. App. Ct. 873

 
 IN THE MATTER OF 17 ALBION STREET TRUST.

100 Mass. App. Ct. 873
 February 2, 2022 - April 20, 2022

Court Below: Probate and Family Court, Middlesex Division
Present: Milkey, Desmond, & Lemire, JJ.

 

Trust, Beneficiary, Construction, Interest of beneficiary. Probate Court, Interpretation of trust instrument, Judicial discretion. Practice, Civil, Summary judgment.

A trust naming as beneficiaries the settlor's two then-living children, as well as any additional children born thereafter, established the settlor's plain intent to create an open class of beneficiaries such that after-born children were to be treated as full beneficiaries; accordingly, a Probate and Family Court judge did not abuse her discretion in considering documented distributions made to the settlor's after-born child and properly entered summary judgment in favor of the after-born child that he gained a beneficial interest both in those trust assets that existed as of the date of his birth and in any assets acquired by the trust thereafter. [878-881]

PETITION filed in the Middlesex Division of the Probate and Family Court Department on July 3, 2017.

 The case was heard by Elaine M. Moriarty, J., on motions for summary judgment, and the entry of separate and final judgment was ordered by her. 

 Michael D. Tauer for Lauren Chertow & another.

 Marlee S. Cowan (William D. Black also present) for Daniel Kresicki-Bloom.

 MILKEY, J. In 1981, Richard Bloom created an irrevocable trust for the benefit of his children. Specifically, the trust document identified the beneficiaries as his then-living children, Jeffrey Bloom and Lauren Chertow, "plus such additional children of [Richard] born thereafter." Richard subsequently separated from the mother of Jeffrey and Lauren (collectively, the older children). [Note 1] In 1985, Richard had another child, Daniel Kresicki-Bloom, with Catherine Kresicki. After Richard died, the older children sought a declaration that their half-brother, Daniel, was

 Page 874 

 not a beneficiary of the trust after all. On cross motions for summary judgment, a Probate and Family Court judge rejected their argument, ruling that Richard unambiguously intended that his after-born children become full beneficiaries. On the older children's appeal, we affirm.

 Background. 1. Overview of the summary judgment record. The parties presented to the judge a joint appendix consisting of sixteen exhibits. Included among these were various uncontested documents, including the "agreement of trust" that created the trust (trust agreement). Also included were affidavits from Daniel, Lauren, and Donna Leeds (Richard's first wife, and the mother of the older children). Among the remaining exhibits was exhibit 7, which is comprised of what appears to be a hand-written ledger and other accounting documents related to the trust. As required by Rule 27C of the Supplemental Rules of the Probate and Family Court (2012) (supplemental rule 27C), the analog to Superior Court Rule 9A, the parties submitted a statement of material facts with their cross motions for summary judgment. Details of that statement are reserved for later discussion.

 2. The trust agreement. Under the trust agreement, Richard's father was designated as the initial trustee. As noted, the beneficiaries were identified as the older children "plus such additional children of [Richard] born thereafter." The trust agreement also recognized the existence of individual subtrusts for each beneficiary: "[a] separate and distinct trust is hereby created for each of the beneficiaries referred to herein above." For administrative convenience, the trustee could commingle the assets of the various subtrusts, but he was supposed to "keep such records as shall fully indicate each beneficiary's share of the trust estate." The trustee was required to pay the income from the subtrusts to the respective beneficiaries on an annual basis. In addition, each beneficiary could demand up to $5,000 per year from the trust's assets, and the trustee was authorized to make further distributions of principal to the beneficiaries of trust assets if, in his "sole discretion," the trustee determined "that such payment or application was reasonably necessary to enable the beneficiary or his issue to be maintained in accordance with the station in life which such beneficiary has established." Section 5 of the trust agreement detailed the trustee's powers. Included among them is the authority set forth in section 5(m)

"[t]o make any division or distribution required under the

 Page 875 

 terms of this Agreement in kind or in money, or partly in kind and partly in money, and to that end to allot to any trust hereunder such corporate shares, securities, or other property, real or personal, as to the Trustee seems proper in his absolute discretion and judgment." 

 3. Other background facts. While acknowledging that the language of the trust agreement itself provides the principal evidence of Richard's intent, both sides sought to support their respective positions by reference to various other facts. They now dispute the extent to which such facts were properly before the judge as part of the summary judgment record.

 The parties appear to agree that consistent with the trust's formal name, the "primary asset" of the trust is the real estate at 17 Albion Street in Wakefield (Wakefield property). [Note 2] Although both sides recognize that there may be other assets in the trust, the record does not establish what those assets might be, with one exception noted infra.

 Without qualification, the older children assert that "[n]o additional assets were contributed to the [t]rust after its initial funding in 1981." However, their underlying record appendix citation for that statement fails to substantiate it. [Note 3] In addition, an undisputed document in the record appendix appears to contradict the claim that no assets were added after 1981. That document, included in the joint appendix as exhibit 4, is a 2017 check from the Lincoln National Life Insurance Company made out to the trust in the amount of $176,871.41 for a "death benefit" (from which an unpaid loan had been deducted). The context indicates that the check was for the net proceeds of a life insurance policy that Richard had

 Page 876 

 obtained for the benefit of the trust. [Note 4] 

 In his affidavit, Daniel averred that, since the age of three, he regularly has received distributions from the trust as a beneficiary. Nothing in the summary judgment record contradicts that claim. To the contrary, the hand-written ledger and other financial records that were included as exhibit 7 appear to corroborate Daniel's claim that he regularly received distributions from the trust, at least with respect to the specific years that such records covered. Nevertheless, as is discussed infra, the older children argue that the judge erred in considering such evidence, because Daniel failed to include the point in the statement of material facts. 

 4. Successor trustees. By the time that Richard died, his father, the original trustee, himself long since had died. Although there is some confusion in the record regarding who succeeded Richard's father as trustee, it appears uncontested that at the time of Richard's death, there was no trustee in place, and there had not been one for a considerable period of time. According to the older children, Richard had been operating the Wakefield property as his own, even though it was owned by an irrevocable trust of which he was neither trustee nor beneficiary.

 5. Proceedings. After Richard died, Lauren filed a petition in the Probate and Family Court seeking appointment of a successor trustee. That petition stated, without qualification, that "[t]he beneficiaries of the trust are Richard Bloom's three children, the Petitioner, Lauren Chertow, Jeffrey R. Bloom and Daniel Bloom." At Lauren's request, Jeffrey and Daniel assented to Lauren's petition. The petition was allowed, and Attorney Janice Nigro was appointed as the successor trustee. 

 After assuming control of the trust, Nigro filed an action in Superior Court against both Richard's estate and Catherine Kresicki (Richard's second wife and Daniel's mother). The complaint, which was based on theories of conversion, constructive trust, and unjust enrichment, alleged that Richard and Catherine

 Page 877 

 improperly had used the trust as their own property to the detriment of the beneficiaries. Nigro also filed in the Probate and Family Court a petition for instructions related to the Superior Court litigation. [Note 5] According to Nigro's petition, Lauren was insisting that the costs of prosecuting the Superior Court litigation be borne equally by the three beneficiaries, including Daniel.

 On December 18, 2018, the older children filed a general trust petition through which they sought to negate Daniel's status as beneficiary. They argued, for the first time, that Richard intended his after-born children to acquire a beneficial interest only with respect to any property added to the trust after such children were born. According to the older children, any property in the trust at the time after-born children were born already had been committed to subtrusts created for the children living at the time the trust was created. Based on their claim that no property in fact had been added to the trust after Daniel was born, and their argument that someone cannot be a beneficiary without a res, [Note 6] they argued that Daniel was not in fact a beneficiary, only a potential one. [Note 7]

 As noted, the judge rejected the older children's argument, concluding instead that the trust agreement evinced an unambiguous intent to treat afterborn children as full beneficiaries. The judge additionally observed that this interpretation is supported by the actions of all involved, including not only Richard and Nigro, but also the older children themselves. Invoking Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), the judge entered a separate and final judgment declaring that Daniel was a beneficiary of the trust "for the reasons set forth in [the judge's] Memorandum of 

 Page 878 

Decision." [Note 8] 

 Discussion. We begin by noting that there is some confusion as to what is properly before us. Read literally, the judgment declared only that Daniel was a beneficiary of the trust, without any specification of the scope of his rights as such. As noted, the older children's theory that Daniel was not a beneficiary was premised in part on their factual claim that Richard added no assets to the trust after Daniel's birth. However, the older children failed to substantiate that factual premise, and the summary judgment record appears to contradict it. If Richard in fact added assets to the trust after Daniel was born, then even under the older children's own theory of the case, Daniel would be a beneficiary. Hence, if the only issue before us is whether Daniel is a beneficiary, then the judgment plainly is correct.

 At the same time, however, the judgment specifically states that the judge was determining that Daniel was a beneficiary "for the reasons" explained in the judge's memorandum of decision. The memorandum of decision in turn expressly rejected the older children's legal theory, not their factual premise. When read in context, [Note 9] the judgment establishes that Daniel is a beneficiary not only with respect to any assets added to the trust after he was born, but also with respect to assets that were in the trust at the time of his birth. We proceed on that basis and turn now to the merits.

 "The interpretation of a written trust is a matter of law to be resolved by the court." Ferri v. Powell-Ferri, 476 Mass. 651, 654 (2017). "The intent of the creator of the trust is the 'controlling consideration' in determining what rights were created by the trust instrument, and that intention must be drawn from the language of the instrument and the attendant circumstances" (citation omitted). Collier v. Napierski, 357 Mass. 516, 519-520 

 Page 879 

(1970). "The rules of construction of a contract apply similarly to trusts; where the language of a trust is clear, we look only to that plain language." Ferri, supra.

 This is not a case where a settlor failed to address the possibility of after-born children or grandchildren, leaving a court to mine the trust documents for clues as to his or her intent about that issue. See, e.g., B.M.C. Durfee Trust Co. v. Taylor, 325 Mass. 201, 202-203 (1950). Instead, the trust agreement here stated explicitly that after-born children would be beneficiaries of the trust. Nor can the older children point to any language in the trust agreement that spelled out that Richard's after-born children were to enjoy a second-class status as beneficiaries, left to benefit only from a share of any assets that Richard might or might not add to the trust after they were born.

 The older children are left to argue that Richard's intent to treat Daniel as a lesser beneficiary is implicit in Richard's creation of the individual subtrusts. They argue that if assets have been committed in trust to specified people, how then can those assets be made available to additional people? But that seeming conundrum has long been solved by the well-recognized construct that a settlor can create an "open class" of beneficiaries. See Pfannenstiehl v. Pfannenstiehl, 475 Mass. 105, 107 n.10 (2016), citing H.S. Shapo, G.G. Bogert, & G.T. Bogert, Trusts and Trustees § 182, at 404 (3rd ed. 2012) (defining open class of beneficiaries as "one in which the interests of currently living beneficiaries are subject to partial reduction in favor of persons born after the creation of the trust who, under its terms, are entitled to share as members"). Under this concept, even where beneficial interests have vested in existing beneficiaries, they remain subject to "partial divestment" to after-born beneficiaries. Dell'Olio v. Assistant Secretary of the Office of Medicaid, 96 Mass. App. Ct. 691, 695 n.8 (2019). We agree with the judge that the trust agreement establishes that this was Richard's plain intent. The fact that some of the trusts at issue here happened to be individual subtrusts does not change the analysis. Nor are we persuaded that it is material that before Daniel was born, the trustee had the power to make distributions to the older children, and in some cases was required to do so. To be sure, problems might arise if Daniel were seeking to claw back any distributions lawfully made to the older children before he was born, but he has forsworn any 

 Page 880 

such interest. [Note 10] 

 In support of her decision, the judge noted that section 5(m) of the trust agreement provided the trustee broad authority to shift around the trust's assets. The older children argue that the language of section 5(m) amounts to unexceptional boilerplate that does not demonstrate Richard's intent as to how after-born children should be treated. While such an argument may be well founded as far as it goes, it ultimately misses the mark. The import of section 5(m) is not that it establishes Richard's intent with respect to after-born children, but only that it provides a means for the trustee to effectuate that intent, which is plainly set forth elsewhere in the trust agreement.

 As the judge pointed out, Richard's intent to treat after-born children as full beneficiaries is also supported by extrinsic evidence, such as the fact that Daniel has been receiving distributions from the trust since he was three. See Kennedy v. Innis, 339 Mass. 195, 202 (1959) (intent at time of transaction may be deduced from parties' subsequent conduct). The older children protest that it was error for the judge to consider Daniel's unrebutted averments about this, because Daniel neglected to include them in the statement of material facts. To the extent that the older children are saying that the judge could have disregarded any of Daniel's averments that were not included in the statement of material facts, we agree. It hardly follows, however, that the judge therefore had no authority to consider this fact. Indeed, it is well-established that a judge has discretion to decide whether to excuse noncompliance with procedural rules such as supplemental rule 27C. See Malden Police Patrolman's Ass'n v. Malden, 92 Mass. App. Ct. 53, 56 (2017) (decision whether to excuse violations of procedures required by Superior Court rule 9A -- the analog to supplemental rule 27C -- is subject to appellate review only for abuse of discretion). 

 The older children have not demonstrated that the judge abused her discretion in considering the documented distributions to Daniel. Although the older children suggest that this amounted to unfair surprise, we are unpersuaded under the circumstances presented. This is particularly true where the trust's financial

 Page 881 

 records -- on which the older children themselves affirmatively sought to rely -- corroborate Daniel's claims. And this leaves aside the fact that perhaps the most damaging extrinsic evidence is the fact that Lauren herself treated Daniel as a full beneficiary up until she devised a new theory to argue the opposite. [Note 11] 

 In sum, interpreting the judgment as establishing that Daniel gained a beneficial interest both in those trust assets that existed as of the date of his birth and in any assets acquired by the trust thereafter, we affirm the judgment. [Note 12]

 So ordered.

FOOTNOTES
[Note 1] Because several individuals share a last name, or variations on that name, we refer to them by their first names after they have been introduced. 

[Note 2] The Wakefield property was acquired by the trust on the day that the trust was created. According to an affidavit from Richard's first wife (and the mother of the older children), Donna Leeds, the trust purchased that the Wakefield property "in significant part" with proceeds from an insurance payment that she and Richard had received from an insurance claim. Because Daniel did not adequately controvert that statement in accordance with the applicable rule, it was deemed admitted for purposes of summary judgment. See supplemental rule 27C (b) (5) (ii). However, the phrase "in significant part" is fundamentally ambiguous, and we are left with little sense of what percentage of the purchase price came from that source. 

[Note 3] In the statement of material facts, the older children cited to exhibit 7, the handwritten financial records. Passing over that such records were not accompanied by any explanation of what they were, it suffices to say that these records, on their face, covered only some of the relevant years. Accordingly, they hardly establish that no new assets were added to the trust after it was created. 

[Note 4] We recognize that the older children claim that the life insurance policy was purchased by the trust out of the trust's income, perhaps allowing some argument that the insurance proceeds should not be viewed as a new trust asset. However, they have pointed to nothing in the summary judgment record to substantiate their claim as to who purchased the policy and with what funds. Daniel specifically highlighted this failure of proof in his portion of the statement of material facts. We additionally note that in related litigation, the current trustee of the trust has alleged that Richard himself obtained the life insurance policy that named the trust as a beneficiary. 

[Note 5] Specifically, the petition stated that instruction was needed on "whether to proceed with the [Superior Court a]ction, and the weight that the Trustee should accord to issues of: i) the cost of legal action; ii) the likelihood of success; iii) collectability against the Estate and Catherine Kresicki; and iv) the potential conflict between beneficiary Daniel Kresicki-Bloom's status as beneficiary to the Trust and as son of potential defendant Catherine Kresicki." 

[Note 6] For this proposition, the older children cite to New England Trust Co. v. Sanger, 337 Mass. 342, 348 (1958) (stating that "there can be no trust unless there is an existing trust res"). 

[Note 7] The record suggests that the older children may have been arguing that Daniel was not a beneficiary (as opposed to a nominal beneficiary without a beneficial interest) in order to simplify the prosecution of the Superior Court litigation that the trust had brought against Richard's estate and Daniel's mother. The parties appear since to have settled upon a different way of trying to address such complications. See note 8, infra. 

[Note 8] At the time that the judge entered the separate and final judgment, the trustee's petition seeking instructions with respect to the prosecution of the Superior Court action remained pending in the probate court. Since then, the parties have reached a procedural agreement regarding the Superior Court action, and the petition for instructions has been dismissed. In essence, the parties agreed to have the trustee delegate the prosecution of the Superior Court action to the older children. They since have intervened in that action, and in so doing have added Daniel there as a defendant. We express no opinion as to the advisability of the parties' procedural agreement. The Superior Court action remains pending. 

[Note 9] Cf. Corman Realty, Inc. v. Rothstein, 4 Mass. App. Ct. 777, 777 (1976) (judgment is to be "read in the context of the findings and rules underlying it"). 

[Note 10] Citing to the Restatement (Third) of Property: Wills and Other Donative Transfers § 15.1 (2011), Daniel acknowledges that where an open class of beneficiaries has not closed, but existing members of the class are entitled to distributions, the trustee generally may make such distributions without attention to the potential for future members to be added to the class. 

[Note 11] Daniel has not argued that judicial estoppel principles should preclude Lauren from arguing that he is not a beneficiary. We therefore need not consider that issue. 

[Note 12] Especially in light of the idiosyncratic trajectory of this controversy, we have no doubt that many questions remain with regard to the details of how the assets of the trust should be distributed among the three beneficiaries. Indeed, today's ruling may well be remembered as merely "one of the ten thousand stages of an endless cause." Glynn v. Gloucester, 21 Mass. App. Ct. 390, 390 (1986), quoting Charles Dickens, Bleak House 2 (M.D. Zabel ed. 1956). As they contemplate their next steps in the ongoing litigation, both sides would be well advised to consider the ultimate result of Jarndyce vs. Jarndyce, the fictional probate case at the heart of Dickens's storied depiction of the legal system. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.