NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1449

LEAH BARROWS

vs.

NEW ENGLAND SCHOOL OF ACUPUNCTURE & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Leah Barrows, appeals from a summary

judgment entered in favor of the defendants on the plaintiff's

ten-count first amended verified complaint.  We affirm.

Background.  "We summarize the undisputed facts in the

light most favorable to the plaintiff, the party opposing

summary judgment."  R.L. Currie Corp. v. East Coast Sand &

Gravel, Inc., 93 Mass. App. Ct. 782, 783 (2018).

The plaintiff enrolled at the defendant New England School

of Acupuncture (NESA) for the 2015-2016 academic year.  That

same year, NESA merged with the Massachusetts College of

_____

[1] Massachusetts College of Pharmacy and Health Sciences, Jason Powers, Will Cribby, and Meredith St. John.

Pharmacy and Health Sciences (MCPHS), and NESA students became students of MCPHS University (school). Defendants Jason Powers, Will Cribby, and Meredith St. John served in managerial roles at the school and communicated with the plaintiff throughout the school year.

Powers told the plaintiff that she would have to attend the school half time because funds were not available for her to attend full time. Her student loan advisor encouraged her to process a student loan for a full year, permitting the school to have use of $10,857 of the loan proceeds interest free for three months starting in October 2015. Meanwhile, the plaintiff was locked out of class selection each semester she attended and was unable to enroll in the classes she wanted, including most of the first-year classes. Cribby guided her to enroll in second-year cadaver labs and third-year Chinese medicine courses, even though she had not taken the prerequisite lower-level classes. The only first-year class the plaintiff was able to enroll in during the fall 2015 semester was "Human Anatomy & Physiology." The plaintiff tried to withdraw from the class because she was in fear of one of the other students, but Cribby refused to allow her to do so. She received a failing grade and was placed on academic probation for the spring 2016 term.

That semester, the plaintiff registered for two first-year classes in Japanese acupuncture that she wanted to take, but

2

Cribby withdrew her from those classes, stating she had not taken the prerequisite courses. Again, he guided her into classes for which she was not prepared. The plaintiff enrolled in courses for a total of six credits, the minimum credit load required for half-time enrollment. Due to the school's cancellation of a quarter-credit lab, the plaintiff's enrollment dropped to less than half-time, rendering her ineligible for forbearance on her undergraduate student loans. She defaulted on these loans.

The plaintiff was notified in May 2016 that she would have to address the default on her undergraduate loans and submit a new loan application to attend courses at the school during the summer semester. Not having sufficient funds to attend the summer session, the plaintiff was forced to drop out. She withdrew from the school on June 2, 2016, citing as the reason for her withdrawal, "Theft of my student loan."

The plaintiff's attorney sent demand letters to the school in 2018 and 2020, detailing substantially the same claims the plaintiff later advanced in her complaint, filed May 15, 2020, in the Superior Court. The defendants moved for summary judgment on the grounds that the plaintiff's tort claims were barred under the applicable three-year statute of limitations and that the remaining claims were not well founded in fact or

3

law.  The judge granted the motion, and judgment entered for the defendants on all counts.

Discussion.  The plaintiff argues the motion judge erroneously granted the defendants' motion for summary judgment. As a threshold issue, contrary to the plaintiff's assertion, the denial of the defendants' motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), had no res judicata effect and did not preclude the defendants' subsequent motion for summary judgment.  The motions are filed at different stages of litigation and are judged under different standards.  Compare Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008) (explaining standard for rule 12 [b] [6] dismissal), with Leavitt v. Mizner, 404 Mass. 81, 88 (1989) (explaining standard for summary judgment).

"[S]ummary judgment is appropriate when the material facts are not in dispute and as a matter of law their legal significance warrants a decision for one party or the other." Campbell v. Schwartz, 47 Mass. App Ct. 360, 363-364 (1999).  The allowance of a motion for summary judgment as a matter of law where there are no disputed issues of material fact obviates the need for a jury trial.  See Correllas v. Viveiros, 410 Mass. 314, 316 (1991); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976).  "We review a decision to grant summary judgment de novo." Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012).

4

Because our review is de novo, we need not address the plaintiff's repeated claims that the motion judge misconstrued or misstated facts in the record.  See Reading v. Murray, 405 Mass. 415, 418 (1989) ("All errors and irregularities in the proceedings below are rendered immaterial" by de novo review [quotation and citation omitted]).

1.  Tort claims.  The plaintiff's complaint, filed May 15, 2020, alleged seven tort claims:  conversion, fraud, breach of fiduciary duty, civil conspiracy, misrepresentation, intentional infliction of emotional distress, and negligence.  Tort claims "are governed by the three-year limitation period provided by G. L. c. 260, § 2A."  Passatempo v. McMenimen, 461 Mass. 279, 293 (2012).  All the plaintiff's claims arise from alleged harms that occurred before her withdrawal from the school, nearly four years before she filed a complaint.  In both the 2018 and the 2020 demand letters, the plaintiff's attorney provided a timeline of events that ended with the spring 2016 semester.  Moreover, the plaintiff acknowledged the harm -- the alleged theft of her student loan -- on her withdrawal form, indicating she was aware of her alleged injuries by the defendants no later than June 2, 2016.

The plaintiff contends, however, that under the common-law discovery rule, her tort claims are not barred by the statute of limitations, and, moreover, that the motion judge usurped the

5

jury's function in concluding that they were.  As to the latter point, "[t]he applicability of a particular statute of limitations is a question of law."  Marks v. Ross Univ. Sch. of Veterinary Med., Inc., 106 Mass. App. Ct. 253, 257 (2025).  "If there is no genuine dispute about when the plaintiff learned of the harm, and the statute of limitations has expired by the time the plaintiff filed [her] complaint, dismissal of the complaint under Mass. R. Civ. P. 12 (b) (6) or summary judgment is appropriate."  Id. at 258.

Under the discovery rule, "a cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm."  Harrington v. Costello, 467 Mass. 720, 727 (2014).  The plaintiff claims that although the comment on her withdrawal form suggests that she knew something was amiss, "with no legal training," she could not have known the nature or extent of the school's tortious conduct; the plaintiff's attorney discovered the full extent of the defendants' misconduct only after sending the first demand letter in 2018, when he put together two financial documents in his possession.

The discovery rule does not toll the statute of limitations until the plaintiff becomes aware of the legal basis or precise

6

contours of a tort claim, but only until she is aware she has suffered harm. "The knowledge required 'is not notice of every fact which must eventually be proved in support of the claim,' but rather 'knowledge that an injury has occurred.'" Pagliuca v. Boston, 35 Mass. App. Ct. 820, 824 (1994), quoting White v. Peabody Constr. Co., 386 Mass. 121, 130 (1982). See Zampell v. Consolidated Freightways Corp., 15 Mass. App. Ct. 954, 954 (1983) ("In instances in which the statute of limitations has been tolled . . . . [f]acts were unknown, not legal theories"). As the plaintiff's counsel admitted at oral argument, the relevant documentation was available to the plaintiff even before her withdrawal from the school. There is no genuine dispute that the alleged harm to the plaintiff occurred -- and that the plaintiff knew of that harm -- any later than June 2, 2016. The filing of her complaint was untimely.[2]

The plaintiff argues that, despite this timing, the statute of limitations does not bar her claim because the defendants fraudulently concealed her causes of action, or alternatively,

---

[2] The plaintiff also argues that the wrongs perpetrated by the defendants were "inherently unknowable" until 2018. The "inherently unknowable" standard is no different from the "knew or should have known" standard. See Davalos v. Bay Watch, Inc., 494 Mass. 548, 553 (2024) (counseling litigants and judges to "use and apply only the 'knew or should have known' language, and not the inherently unknowable formulation, when discussing the discovery rule").

because a fiduciary relationship existed between her and the defendants.

> "When a defendant fraudulently conceals a cause of action from the knowledge of a plaintiff, the statute of limitations is tolled under G. L. c. 260, § 12, for the period prior to the plaintiff's discovery of the cause of action. Where a fiduciary relationship exists, the failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent conduct and is equivalent to fraudulent concealment for purposes of applying § 12."

Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 519 (1997). In either circumstance, an actual knowledge standard applies, and the statute of limitations "begins only once the plaintiff gains knowledge of the particular harm forming the basis for his or her claim." Tocci v. Tocci, 490 Mass. 1, 13 (2022). In other words, the statute of limitations is tolled until "the beneficiary's harm at the fiduciary's hands has 'come home' to the beneficiary." Doe v. Harbor Sch., Inc., 446 Mass. 245, 255 (2006), quoting Akin v. Warner, 318 Mass. 669, 676 (1945). "However, if the plaintiff has either actual knowledge of his claim or the 'full means of detecting the fraud,' the limitations period is not tolled." Stolzoff v. Waste Sys. Int'l, Inc., 58 Mass. App. Ct. 747, 757 (2003), quoting Lynch v. Signal Fin. Co., 367 Mass. 503, 508 (1975).

Assuming without deciding that the defendants had a fiduciary relationship with the plaintiff, she has presented no evidence that they concealed facts necessary for her to

8

apprehend that the defendants had harmed her, fraudulently or otherwise. The plaintiff, and her attorney, had access to the very financial records that, she claims, confirmed the school's improprieties. Her statement on the withdrawal form indicates she had the full means to detect, and indeed did detect, the fraud she now alleges, on or before June 2, 2016. Because the period between this detection and the filing of her complaint exceeds three years, and because the plaintiff has failed to establish "facts that, if proved at trial, would bring the plaintiff's claims outside the impact of the statute of limitations," O'Connor v. Redstone, 452 Mass. 537, 551 (2008), her tort claims are time barred, and summary judgment was properly granted as to those claims.

2. Contract, c. 93A, and declaratory relief claims. The plaintiff also alleged claims for breach of contract, violation of G. L. c. 93A, and declaratory relief. Although these claims were brought within the relevant statutes of limitations, the judge determined that the defendants were entitled to summary judgment as a matter of law on all three of them. The plaintiff's brief makes only fleeting references to her c. 93A claim and does not mention the claim for declaratory relief even once, so we do not address these claims further. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019)

9

("The appellate court need not pass upon questions or issues not argued in the brief").

References to the plaintiff's contract claim are peppered throughout her brief, but without any recognizable organization or sustained argument, and without reference to a single legal authority. Arguments based on "naked assertion[s], unsupported by any authority or reasoned argument," Andover v. Energy Facilities Siting Bd., 435 Mass. 377, 394 (2001), do not rise to the level of appellate argument and are deemed waived. See Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011); Geezil v. White Cliffs Condominium Four Ass'n, 105 Mass. App. Ct. 103, 112 n.8 (2024); Adoption of Zak, 90 Mass. App. Ct. 840, 842 n.4 (2017).

3. Abuses of discretion. The plaintiff further argues that the motion judge failed to address opposing counsel's violations of Superior Court rules and that the defendants destroyed evidence.[3]

"[A] judge has discretion to decide whether to excuse noncompliance with procedural rules." Matter of 17 Albion St.

---

[3] The plaintiff also claims that the judge was "hostile" to her, but she does not provide evidence to support this allegation other than the judge's delay in deciding the summary judgment motion. The record does not support the plaintiff's claim of judicial bias, and, in any event, the claim is untimely. See Demoulas v. Demoulas Super Mkts., Inc., 428 Mass. 543, 549 (1998).

10

Trust, 100 Mass. App. Ct. 873, 880 (2022). See USTrust Co. v. Kennedy, 17 Mass. App. Ct. 131, 135 (1983) (trial judges "have discretion to forgive a failure to comply with a rule if the failure does not affect the opposing party's opportunity to develop and prepare a response"). The plaintiff does not explain how she was disadvantaged by the defendants' procedural rule violations, such as their failure to confer with her prior to filing the summary judgment motion, or alleged tampering with her summary judgment exhibits. The plaintiff's attorney was aware that the defendants would be filing the motion and does not claim that further discussions are likely to have "narrow[ed] areas of disagreement," as is the purpose of the rule. Rule 9C (b) of the Rules of the Superior Court (2025). Likewise, even assuming, arguendo, that the defendants committed the other bad acts the plaintiff alleges, they had no effect on the proceedings. In response to the plaintiff's claims of document tampering, the judge agreed to rely on the plaintiff's documents alone.

Finally, the plaintiff challenges the judge's denial of her motion for sanctions against the defendants for spoliation. We review the denial of the plaintiff's motion for an abuse of discretion. See Zaleskas v. Brigham & Women's Hosp., 97 Mass. App. Ct. 55, 75 (2020). We agree with the judge that the statues and regulations the plaintiff relies upon are

11

inapplicable.  Nor do we discern an abuse of discretion in the judge's determination that the plaintiff's withdrawal, citing "Theft of my student loans," did not put the defendants on notice that the plaintiff's academic records might be relevant to a possible action four years later.  See Kippenhan v. Chaulk Servs., Inc., 428 Mass. 124, 127 (1998).  Additionally, the plaintiff's attorney stated that he downloaded and saved the documents that the defendants allegedly destroyed, suggesting that no harm flowed from the defendants' failure to retain records.

Judgment affirmed.

By the Court (Massing, Hand & Allen, JJ.[4]),

Clerk

Entered:  February 9, 2026.

---

[4] The panelists are listed in order of seniority.